## OLD COLONY TRUST CO. v. WICKARD BROS.

### FORT DODGE, D. M. & S. R. CO. v. SAME.

(Circuit Court of Appeals, Eighth Circuit. May 19, 1915.)

Nos. 4128, 4180.

SUBSCRIPTIONS ☞19—RAILROADS—DISCONTINUANCE OF LINE—RECOVERY OF DONATIONS UNDER IOWA STATUTE.

Code, Iowa, 1897, §§ 2092, 2094, provide that a court may authorize a railroad company to change or remove the line of its constructed road, but that such change or removal of a line shall not be made without repayment of "all moneys * * * which were donated to the company building the same exclusively in consideration of said railroad being located and constructed on such line." *Held*, that to entitle persons to recover under such provisions on the discontinuance of a line of road, there must be substantial evidence that the money was paid to the company which built the road, and that it was given and received as a donation, and exclusively in consideration of the location and building of the road where it was.

[Ed. Note.—For other cases, see Subscriptions, Cent. Dig. §§ 22, 24; Dec. Dig. ☞ 19.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Southern District of Iowa; Smith McPherson, Judge.

Suit in equity by Old Colony Trust Company, of Boston, Mass., and others against the Ft. Dodge, Des Moines & Southern Railroad Company, Wickard Bros., and about 150 others, interveners. From provisions in the decree in favor of interveners, complainants and the Railroad Company appeal. Modified.

James C. Davis, of Des Moines, Iowa, for appellant Old Colony Trust Co.

S. R. Dyer, of Boone, Iowa, for appellant Ft. Dodge, D. M. & S. R. Co.

O. C. Meredith, of Newton, Iowa, for appellees.

Before SANBORN and CARLAND, Circuit Judges, and AMIDON, District Judge.

SANBORN, Circuit Judge. These are appeals from the decree of foreclosure of the mortgage of the Ft. Dodge, Des Moines & Southern Railroad Company to the Old Colony Trust Company rendered September 15, 1913. They do not assail the general terms of that decree, but they challenge those portions thereof which require the payment to Wickard Bros. and others, interveners in the foreclosure suit, and appellees here, of the sum of $2,450 on account of certain alleged donations they claimed to have made to the Newton & Northwestern Railroad Company, a corporation, which about the year 1904 constructed about 100 miles of railroad from Rockwell City in Calhoun county, Iowa, by way of Des Moines Junction, to Goddard and Newton in that state. About the year 1908 a mortgage made by the Newton & Northwestern Railroad Company, which had become insolvent, was foreclosed and under the foreclosure the Ft. Dodge, Des Moines & Southern Railroad Company became the owner of the railroad constructed by the former company. On June 4, 1910, the Old Colony Trust Company commenced a suit for the foreclosure of its mortgage of $3,500,000 on the property of the Ft. Dodge Company, receivers were appointed, and the suit culminated in the decree of foreclosure from which these appeals were taken. During the pendency of that suit the court below, on December 7, 1912, on the petition of the receivers, rendered a decree that they should abandon that portion of the railroad 27 miles in length between Des Moines Junction and Goddard, that they should sell the salvage thereof, and that they should also sell the 14 miles of the railroad extending from Newton by way of Goddard to Colfax. An appeal from that decree was taken to this court, where it was affirmed. Reference is made to the report, statement, and opinion in that case for a map of the railroad and a more extended history than it is thought necessary to set forth here. State of Iowa v. Old Colony Trust Co., 215 Fed. 307, 311, 313, 314, 131 C. C. A. 581, 585, 587, 588, L. R. A. 1915A, 549.

After the decree of abandonment of the 27 miles and of the separate sale of the 14 miles of the railroad had been rendered, Wickard

Bros. and others filed a petition of intervention in the foreclosure suit, in which they alleged that they donated to the Newton & Northwestern Railroad Company sums of money aggregating about $2,450 at the time the railroad from Rockwell City to Newton was constructed, that those sums were used in the construction of that railroad at the request of representatives of that railroad and in reliance upon their assurances that a line of railroad would be built and permanently operated between Rockwell and Newton. In answer to this petition the Old Colony Trust Company pleaded its mortgage from the Ft. Dodge Company, alleged that this mortgage was a first lien on all the property of that company, and denied any knowledge or notice of the alleged donations. The Ft. Dodge Company made a similar answer.

The petition of the interveners is founded on these provisions of the statutes of Iowa:

"Any railroad desiring to change or remove the line of its road, after the same has been permanently located and constructed, may file a petition in the district court in any county wherein the change or removal is proposed to be made, describing with reasonable accuracy that portion of its line which it seeks to have changed or removed, and asking the court to grant authority to make such change or removal." Code of Iowa 1897, § 2092.

"No railway company shall be allowed to change or remove its line of road, after a permanent location and construction, without repaying all moneys, and restoring all property, or its value, which were donated to the company building the same exclusively in consideration of said railroads being located and constructed on such line, to the parties donating the same, their heirs or assigns." Section 2094.

Evidence was introduced, a final hearing was had, and the court inserted in subdivision 11 of paragraph 10 of the decree of foreclosure provisions to the effect: (a) That if the 14 miles of railroad from Newton to Colfax should be dismantled, or if it should not be operated by September 15, 1914, $2,457.50 should be paid to the interveners; and (b) that in selling this part of the railroad $2,457.50 should be deposited in the registry of the court for the interveners as a condition of the confirmation of the sale, and it inserted in section 6 of paragraph twenty-fifth of the foreclosure decree a provision that out of the proceeds of the sale of the other parts of the property of the Ft. Dodge Company nothing should be paid on the debt secured by its mortgage to the Old Colony Trust Company or on certain other claims until the $2,457.50 had first been paid to the interveners.

Counsel for the Old Colony Company and for the Ft. Dodge Company challenge these provisions of the decree on the grounds: (1) That the evidence fails to prove the facts essential to the right of the interveners under the statute to the repayment of any·moneys; (2) that no proceedings have ever been taken for the abandonment of the 14 miles of railroad between Colfax and Newton; (3) that the abandonment of the 27 miles of railroad from Des Moines Junction to Goddard pursuant to the decree of the court in the foreclosure suit because under the general principles and practice in equity its farther operation was inequitable and inexpedient, was not a proceeding under the statutes, nor of the nature of such a proceeding, and therefore entitled the interveners to no repayment; and (4) that

the lien of the mortgage to the Old Colony Trust Company is superior in equity to the claim of the interveners.

The interveners demand the repayment of moneys under section 2094 as a condition of the change or removal by the Ft. Dodge Company of a portion of its line of railroad. It is, however, moneys "which were donated: (1) To the company building the same (the railroad); (2) exclusively in consideration of said railroad being located and constructed on such line," and such moneys only that may be repaid under this statute. The petition of the interveners alleges that they donated their money to the Newton & Northwestern Railroad Company. This averment is denied by the answers. There were only two witnesses in the case. C. F. Morgan, a merchant, who was president of the Commercial Club or Business Men's Association of Newton in the years 1902, 1903, and 1904, testified that Hamilton Brown called on him in January, 1903, "and said they were contemplating building a road, as I remember it, to either Oskaloosa or Newton," and he wanted to know if the citizens of Newton would contribute something to secure the coming of the road to Newton; that he wanted $3,000; that Mr. Hindorff collected about $2,500, and caused a draft to be issued on July 1, 1904, for $2,457.50 which he "signed over to Hamilton Brown," and sent to him. On cross-examination he testified that there was a written subscription, setting out the terms and conditions under which this money was subscribed, which was circulated around, but that he did not know where it was unless the bank had it; that the point the people of Newton were anxious for was that the railroad should run into Newton; that he did not recall what company constructed the road, whether it was a construction company or a railroad company; that all he knew about it was that the people of Newton contributed $2,-500 to Hamilton Brown; and that the impression was that Hamilton Brown was the construction man, or the man who did construct the railroad, or was the general manager of construction, but that he knew nothing about that personally. A. E. Hindorff testified that he was not interested personally in the subscription; that he did not know what became of the original subscription paper; that his understanding is that it was turned back to Mr. Morgan, or the officers of the association; that a paper which he presented and introduced in evidence contained a list of collections which he made for the benefit and construction of the Newton & Northwestern Railroad Company; that he was hired and paid $50 for making the collection; that he was assistant cashier of the Jasper County Savings Bank at the time he made this collection, and was cashier of that bank when he testified; that on July 1, 1904, he issued a draft No. 113,238 on the Commercial National Bank of Chicago issued by the Jasper County Bank of Newton for $2,457.50, payable to the order of C. F. Morgan; that that draft was cashed on the Commercial National Bank of Chicago by Hamilton Brown; that the draft came back from Chicago to the Jasper County Bank; that he turned it over to J. C. Cross; that J. C. Cross was at one time secretary of the Commercial Association, and when he testified was an attorney in Newton; that he had made search to ascertain the whereabouts of the

draft, but had been unable to find it; and that he had always thought that it was taken in this case and presented as evidence. He further testified that his understanding was that the draft was indorsed over by Mr. Morgan to Hamilton Brown, and that he used it "for the benefit of the construction or building of the Newton & Northwestern Railroad Company near by the city of Newton." The foregoing is all the material evidence upon the question now under consideration in this case.

The burden was on the interveners to prove by substantial evidence that they donated this $2,457.50, as they alleged: (1) To the Newton & Northwestern Railroad Company; and (2) exclusively in consideration that the road should be located on the line from which it is proposed to remove it. Repeated readings of the testimony have failed to disclose any substantial evidence of either fact. It is essential to proof of a donation that there should be substantial evidence of the person to whom, or corporation to which, the donation was made and of his or its acceptance of the gift. It is a remarkable fact in this case that while it is conclusively proved that there was a written subscription agreement which set out the terms and conditions of the subscription, and there is no evidence that any search has been made for this agreement, or that it cannot be found, yet it is not produced. It is equally remarkable that while there is evidence tending to show that the money contributed was paid over by Mr. Morgan to Hamilton Brown by means of a draft of the Jasper County Bank, which was paid and returned to that bank and delivered to Mr. J. C. Cross, an attorney of Newton, Mr. Cross was not called as a witness, nor was the draft produced. It seems probable that the subscription agreement and the draft would have shown the party for whom or for which the subscription was made with clearness and certainty. But all the evidence in the record upon this subject amounts to this. There is substantial evidence that on the statement of Hamilton Brown that "they" were contemplating building a railroad a subscription list, which stated the terms and conditions of the subscription, was made and signed by the interveners; that from the parties who signed that list Mr. Hindorff collected $2,450, which he embodied in a draft on a Chicago bank payable to Mr. Morgan, who signed it over to Hamilton Brown, who cashed it. But there is not a scintilla of evidence that Brown solicited this money for or paid it to the Newton & Northwestern Railroad Company which, according to the finding of the court below, built the railroad, or that that company ever received or accepted this money. There is no substantial evidence that Hamilton Brown was authorized by the railroad company as its agent, officer, or otherwise to solicit, or receive, or accept the money for that railroad company. The strongest testimony in the record for the interveners on this issue is Hindorff's testimony that his understanding was that the draft was indorsed over to Hamilton Brown, and "he used it for the benefit of the construction of the Newton & Northwestern Railroad Company near by the city of Newton," and the testimony of Morgan, who "signed over" the draft and sent it to Hamilton Brown, that the impression was that Hamilton Brown—

"was the construction man, or the man who did construct it, or the general manager of the construction. Q. Of course, you knew nothing about that personally? A. No, sir. * * * Q. You don't even know what company really constructed the road, whether it was a construction company or a railroad company? A. I don't recall that either. Q. You don't know whether Hamilton Brown kept the money or turned it over to a railroad? A. No, sir. Q. All you know is that people of Newton made a contribution to Hamilton Brown of $2,500? A. Yes, sir."

And that is all that the evidence in this case proves and all that this court knows or can learn from the record of it. The understanding of Mr. Hindorff as to the use of the draft or the money it represented by Brown, in the absence of any evidence whatever that he had any knowledge of the facts relating to the subject, is insufficient to warrant the taking by any court of $2,450 from the mortgagee, the Old Colony Trust Company, which on the record is entitled to it in payment of the mortgage debt, and transferring it to the interveners. As the evidence fails to prove the donation of the $2,457.50 to the railroad company which built the railroad, the portions of the decree questioned by the appeals cannot be sustained, and they must be stricken from the decree on this ground.

The conclusion which has been reached renders it unnecessary to discuss any of the other objections to the decree. It seems equally clear, however, that there is no substantial evidence in this case that the alleged donations were made by the interveners "exclusively in consideration of said railroad being located and constructed on the line which the Old Colony Trust Company, or the Ft. Dodge Company, or the receivers, desire to change or remove." The only evidence on that subject is the testimony of Mr. Morgan that the point the people of Newton were anxious for was that the railroad should run into Newton. There is no desire or proposition to change or remove the line from Colfax via Goddard to Newton, or from Goddard to Newton. The line which has been abandoned, the 27 miles between Des Moines Junction and Goddard, does not reach or enter Newton, and no proceeding has been taken under the statute to change or remove it. That portion of the railroad has been abandoned by virtue of a decree of the court below, affirmed by this court, because its operation is so inconvenient and inequitable that the courts were of the opinion it was their duty to have the receivers abandon it. There is no proof that it was exclusively on account of the location and construction of the line over these portions of the railroad that the interveners made their subscription and paid their money to Hamilton Brown.

Let that portion of the decree of foreclosure herein from which these appeals were taken, which contains in subdivision 11 of paragraph 10 thereof the provisions to the effect: (a) That if the 14 miles of railroad extending from Newton to Colfax should be dismantled, or if it should not be operated by September 15, 1914, $2,457.50 should be paid to the interveners; and (b) that in selling this part of the railroad, $2,457.50 should be deposited in the registry of the court for the interveners as a condition of the confirmation of the sale thereof; and that portion of the decree in section 6 of paragraph 25 thereof which provides in effect that out of the proceeds

of the sale of the property covered by the mortgage foreclosed, nothing should be paid on the debt secured by that mortgage, or on certain other claims until $2,457.50 had first been paid to the interveners—be removed from the foreclosure decree, and let the appellants recover their costs herein.