[Civ. No. 4050. Second Appellate District, Division Two.—July 26, 1923.]

## ANNA B. FREEMAN et al., Respondents v. HUBERT ADAMS, Defendant; GEORGE W. CRAMER, Appellant.

[1] NEGLIGENCE — PERSONAL INJURIES — ACTION FOR DAMAGES—PRESUMPTION AS TO JURORS—INSTRUCTIONS.—In an action for damages for personal injuries suffered by plaintiff because of the alleged concurring negligence of the defendants, an instruction that "In determining what a reasonable and prudent man would do under the circumstances you will remember that presumably a jury is composed of such reasonable and prudent persons, and you may each ask yourself, did the defendants do, or fail to do, anything which, under the circumstances, I would not have done or would have done," does not state the law; and, in this action, a review of the evidence having shown that substantial injury may have been done the appellant thereby, the giving of such instruction resulted in a miscarriage of justice.

[2] ID.—CONCURRENT NEGLIGENCE—INSTRUCTIONS.—In the instruction, "If you find that the plaintiff's injuries were the proximate result of the combination of the negligent acts of the two defendants, it will be unnecessary for you to inquire whether they were concurrent or successive or independent, or whether one proximately contributed to the result more than the other," the words "or independent" should be omitted.

[3] ID.—AUTOMOBILE ACCIDENT—BURDEN OF PROOF—RES IPSA LOQUITUR—INSTRUCTIONS.—In this action for damages for personal injuries suffered by plaintiff when the automobile stage in which she was riding overturned, the instructions of the trial court should not have contained the statement that "The plaintiff is not required to show particularly what the specific act of negligence was which produced the injury, it is only required to show by a preponderance of the evidence that the accident could not have ordinarily occurred had due care been employed by the defendants."

[4] ID.—INTENT—INSTRUCTIONS.—In such action, the instruction of the trial court "that intent is not an essential element of negligence. Neither intention to injure the plaintiff nor intention to violate the law, nor an intention to do the act or acts which caused the injury, is necessary. It is sufficient if the defendants did an act from which the plaintiffs suffered an immediate injury," should

---

2. Recovery for negligence of two or more persons resulting in injury to another, note, 16 Am. St. Rep. 250.

have contained the word "negligent" before the word "act" in the last sentence; but, in view of the other instructions given, the jury could not have been misled by such omission.

APPEAL from a judgment of the Superior Court of San Diego County. S. M. Marsh, Judge. Reversed.

The facts are stated in the opinion of the court.

Jennings & Belcher for Appellant.

Wright & McKee for Respondents.

WORKS, J.—This is an action for damages for personal injuries suffered by plaintiff Anna B. Freeman because of the alleged concurring negligence of the defendants. The cause was tried by a jury and judgment went against both defendants. Defendant Cramer alone appeals.

[1] It is contended by appellant and conceded by respondent that the trial court erred in giving the following instruction to the jury: "In determining what a reasonable and prudent man would do under the circumstances you will remember that presumably a jury is composed of such reasonable and prudent persons, and you may each ask yourself, did the defendants do, or fail to do, anything which under the circumstances, I would not have done or would have done." It is plain that this instruction does not state the law. If it is to be presumed that every jury is composed of reasonable and prudent persons, that is far from saying that every member of a jury is actually reasonable and prudent. So to say would be to speak counter to the teachings of experience and to discredit the truth of the classic anecdote concerning the eleven unreasonable jurors whom the reasonable twelfth could not convince. The presumption mentioned in the instruction is a disputable one, but the trial court made it conclusive in the eyes of the members of the jury and gave them an utterly false basis upon which to reason in arriving at a verdict.

Respondent, relying upon the provisions of section 4½ of article VI of the constitution, insists that a reversal of the judgment against appellant need not follow from this manifest error of the trial court. That section is to the effect that no reversal of a judgment shall be caused by any

error occurring at a trial "unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." This claim of respondent is based upon the view that the negligence charged against appellant involves no question as to what a reasonable and prudent man might or might not do. The catastrophe out of which the injuries to Mrs. Freeman arose was the overturning of an automobile stage in which she was a passenger. Appellant was the owner of and operated a delivery automobile, and respondents' cause of action against appellant was based upon the view that the negligence of the driver of the delivery auto was a proximate cause of the overturning of the stage, which was owned and operated by appellant's co-defendant. The contention of respondent is that the only negligence charged against appellant is that his driver failed to obey the positive mandate of the law in operating the delivery auto at the time of the accident in question in the case, not that he operated it in a manner different from that in which a reasonable and prudent man would have operated it. Subdivision (n) of section 20 of the Motor Vehicle Act, so called (Stats. 1919, p. 216; Deering's Consol. Supp. to Codes and Gen. Laws 1917–21, p. 1666), provides that no driver of a motor vehicle upon a public highway shall turn his car without seeing first "that there is sufficient space for such movement to be made in safety," and, if other vehicles reasonably may be affected by the turn, without making with his arm a signal described by the statute. Respondents' claim is that the sole negligence of appellant's driver lay in his failure to observe these provisions of the law. In this view respondents are in error. The charge in the complaint is "That . . . a delivery automobile . . . which was being driven immediately in front of said stage, and a little to the right thereof, suddenly, negligently and carelessly and without warning turned directly in front of said stage." What relationship the negligence thus charged bore to the accident in which Mrs. Freeman was injured will be developed later. It is enough for the present to observe that more than a mere failure to obey the law is alleged. The driver is charged, plainly, with having committed acts which a reasonable and prudent man would not have committed. The questioned instruction, therefore, touched directly upon

the functions which the jury was to discharge. They were to judge whether appellant's driver had conducted himself in a reasonable and prudent manner, not merely whether he had obeyed the mandate of the law. In fact, leaving for a moment the question of pleading and considering the question of evidence, it may be remarked that if the driver of the delivery auto had observed the provisions of the statute to which we have referred and yet had acted as some of the testimony indicates that he did act, he would nevertheless have been guilty of negligence. The truth of this statement will be demonstrated when we come, as we now do, to recite the facts in the case.

Leaving now the contentions advanced by respondents and proceeding on more general grounds, did the giving of the instruction result in a miscarriage of justice as that term is used in the constitution? In endeavoring to answer this question we have examined the entire cause, including the evidence. After such examination we state first those phases of the evidence which tend toward a support of the verdict, as follows: Defendant Adams owned and operated an automobile stage line between El Cajon and San Diego. Appellant, the owner of a bakery, operated an automobile delivery wagon or truck in connection with his business. On the day upon which Mrs. Freeman was injured she was a passenger on one of Adams' stages upon a trip from El Cajon to San Diego. The vehicle was driven by one Brenner. Immediately preceding it was a stage driven by Adams himself. The two stages, throughout the trip and up to the time of the catastrophe in which Mrs. Freeman was injured, maintained a distance apart of 150 feet or more. The accident occurred in San Diego at the intersection of University Avenue and Arnold Avenue. The former thoroughfare is eighty feet in width between curb lines and extends east and west. Arnold Avenue proceeds south from University Avenue. A double-track street railway occupies the middle of the latter street. The two stages were moving west along the northerly side of University Avenue. Appellant's delivery auto was proceeding west on the same street, ahead of the stage driven by Adams, and near the northerly street-car track. It was being driven by one Davenport. As they approached Arnold Avenue Adams sounded his horn, but Davenport, according to Adams, "didn't do

nothing, he didn't give me no room and I kept sounding my horn and he kept crowding me over and he was way out in here [indicating] in the middle of the car tracks. I was then south of the center of the street. . . . I kept sounding my horn and sounding it, and he wouldn't give me no road and as I passed he seemed to swing back toward the right hand side of the street, that is toward the curb, the north curb on University Avenue." As the two stages approached Arnold Avenue the one driven by Brenner was 150 feet behind Adams and was traveling at a rate of two or three miles an hour over the speed limit of twenty miles. Brenner kept this rate until he slowed down and turned to avoid a collision, as related below. After veering to the right and toward the north side of University Avenue, as stated by Adams and admitted by Davenport, the latter made no signal with his arm, as required by law, indicating that he intended to turn to the left, cross University Avenue and proceed south to Arnold Avenue, nor did he look back, as, in effect, he was required by law to do if he intended to turn. He did, however, turn toward the left at some time between the moment when Adams passed him and the time when Brenner came up, probably immediately after the former passed. None of the occupants of Brenner's stage saw the delivery auto until the stage was almost upon it. The statements of some of them follow. Mrs. Freeman testified: "When I first saw the bakery wagon we were near the grocery-store. The bakery wagon was directly in front of us. We were very near to it. I felt sure we had either to hit that car or make the turn." She further said, on being questioned by a juror: "We were not as far behind the bakery wagon as across the room. I first remember the bakery car was directly in front of us. I don't know how near, but I know it was very near. I know we had to make the turn or hit that car, so we certainly were very near." A witness who was riding on the front seat with Brenner said: "Mr. Brenner sounded his horn to pass a wagon in front of us—sounded his horn good. I saw the bakery wagon just as soon as it came across the road in front of us. . . . When I first saw the wagon I stood up in the car in my excitement and said, 'Watch out.' The bakery wagon, when I first saw it, was not more than ten feet in front of the stage." Brenner testified: "I saw I either had to hit him or turn

south on Arnold Street. . . . I was sounding my horn. . . . I gave a good signal. I held my hand on it; I gave it a long signal. The driver of the bakery wagon did not change his course when I sounded my horn. I could not have gone around to the right of him and avoided the accident. He was directly in front of me when he turned, he turned directly in front of me. . . . When I first saw this bakery wagon I was about fifty feet behind him.'' To avoid a collision Brenner turned the stage toward the left and Davenport stopped the delivery auto. The stage passed in front of Davenport's car and at some considerable distance from it as it stood, ran into the curb at the southwest corner of the two thoroughfares and overturned.

There is much difficulty involved in so construing the evidence, thus favorably stated, as to view it as furnishing a support for the verdict. That difficulty lies principally in the fact that the second stage was shown to have been at least 150 feet behind the first at about the time when Adams came up with Davenport. If this distance was maintained until Adams had passed Davenport it is hard to understand why the car driven by the latter, starting to turn immediately behind Adams, was not seen by Brenner in ample time to enable him to avoid the accident. The street was wide and there was no intervening obstacle. There are, however, several phases of the evidence from which the jury might have inferred that the distance was not maintained, or, at least, that Brenner was much less than 150 feet behind Davenport when the latter commenced to make the turn. In the first place, it is possible that Adams was forced to slow down to a considerable degree during the period in which, according to his testimony, he was experiencing his difficulty in passing Davenport, thus decreasing materially the distance between the two stages. Further, Davenport was driving much slower than Adams when the latter passed. This, together with the circumstance of his veering to the right, toward the north curb of University Avenue, as Adams passed, gave Brenner the opportunity to approach rapidly in Davenport's direction before the latter began to make the turn. Again, the fact that no one in the second stage *saw* the bakery wagon until the stage was very near it, as detailed by the witnesses whose testimony is quoted above, was some evidence to the jury that the two vehicles

were actually so near each other when Davenport began to make the turn that his negligence contributed proximately to the accident. Brenner was negligent in driving faster than the law allowed him to drive, but his excess over the speed limit was so slight, according to some of the evidence, that the members of the jury were possibly justified in concluding that he could not have avoided the accident if he had been driving within the limit. This point, however, we do not decide. The judgment must be reversed, as the sequel will show, and we are careful not to pass upon the weight or effect of the evidence presented in the present record, as a second trial of the cause may follow the reversal.

We have thus far dwelt upon the phases of the evidence which tend toward upholding the verdict, but there are other lights in which it may be viewed. There was testimony to the effect that Brenner's stage was from a block to a block and a half to the rear of Adams when the latter came up with Davenport, instead of only 150 feet, and a plat in the record shows the block between Arnold Avenue and the thoroughfare next to it and toward the east to be 265 feet long. We have referred to the fact that evidence in the record shows that, just before the accident, Brenner was driving but two or three miles the hour over the speed limit. There was testimony showing that he was then driving ten or fifteen miles above the limit. We have quoted the testimony of Adams to the effect that when he passed Davenport the latter veered to the right and toward the north curb on University Avenue. There was other evidence showing that after this movement Davenport never got far from the northerly rail of the northerly car track, his southerly wheels being in close proximity to that rail and perhaps even to the southward of it. In other words, according to this testimony Davenport, after Adams passed him, was directly in front of Brenner. It will be remembered that Adams testified that he was crowded south of the center of the street by Davenport before he could pass him. It will be seen from the evidence thus epitomized that there was much question under the evidence whether any negligence of Davenport was a proximate cause of Mrs. Freeman's injuries. The jury may well have experienced great difficulty in arriving at a verdict against appellant.

Under these circumstances, did the giving of the instructions now in question result in a miscarriage of justice? It is doubtful if such an instruction would be harmful in any case with many jurors. While the instruction is contrary to law, it is probable that it did not initiate in all the members of the jury mental processes different from those constantly employed by jurors in practice. It is much to expect of any juror that he could contemplate himself as lacking in reasonableness or prudence or as possessed of an undue degree of either, or that he could reason from the standpoint of an imaginary being outside himself—the reasonable and prudent man of the law. Despite the fixed rules upon the subject it is doubtful if many jurors will measure the conduct of others by any standard but that which would govern themselves under similar circumstances. There may have been on the jury in this case, however, jurors who could successfully have performed this feat, but for the instruction which was given them. We cannot close our eyes to the fact that the verdict as to appellant *may* have been entirely different but for the giving of the instruction now under consideration. Does this fact furnish room for the application of section 4½ of article VI of the constitution? There are decided cases which bear directly upon the point. It was said in a case in which certain evidence had been improperly admitted: "After a most careful consideration of the entire cause, including the evidence, but without the presence of the actual witnesses before us, we are unable to determine whether the defendants would or would not have been convicted by the jury had this erroneously admitted testimony been withdrawn from their consideration. This being so, we do not feel that section 4½ of article VI of the constitution can be given application to uphold the judgment" (*People* v. *MacPhee*, 26 Cal. App. 218 [146 Pac. 522].) In another case, the trial court having erroneously admitted a confession in evidence, it was said: "The salutary provision of section 4½ of article VI of the constitution cannot successfully be invoked to uphold the judgment. After a most careful consideration of the entire cause, including the evidence, we are unable to determine whether the trial judge would or would not have excluded the confession had he heard defendant's testimony before ruling upon its admissibility; nor are we able to say whether the jury would or would not

have convicted the defendant if the erroneously admitted confession had been excluded from their consideration. This being so, we do not feel that section 4½ can aid the judgment" (*People* v. *Columbus,* 49 Cal. App. 761 [194 Pac. 288]). The supreme court said in *People* v. *Lapara,* 181 Cal. 66 [183 Pac. 545], that "it must affirmatively appear to the satisfaction of this court that a defendant may well have been substantially injured by the error complained of before a reversal of a judgment of conviction may be had," under the section of the constitution now under consideration. From the rule laid down in these cases we conclude that the present judgment against appellant cannot stand. There is no doubt that substantial injury *may* have been done appellant by the instruction. We certainly cannot say that such injury was not done.

[2] In view of the possibility of a retrial of the action we must notice briefly objections which are made to other instructions given by the trial court. The jury was instructed as follows, omitting words and phrases which do not affect the question now to be mentioned: "If you find that the plaintiff's injuries were the proximate result of the combination of the negligent acts of the two defendants, it will be unnecessary for you to inquire into the relation in period of time of such acts and negligence, or whether they were concurrent or successive or independent, or whether one proximately contributed to the result more than the other." Appellant insists that this instruction was erroneous because of the inclusion in it of the words "or independent." Without passing upon the validity of this objection, it is enough to say that it were better if the two words had not been included in the instruction.

[3] The following instruction was given to the jury, the italics being ours: "*The plaintiff is not required to show particularly what the specific act of negligence was which produced the injury, it is only required to show by a preponderance of the evidence that the accident could not have ordinarily occurred had due care been employed by the defendants,* and you are instructed that if the testimony in this case shows, by a preponderance of the evidence that the plaintiff's injuries were sustained by reason of the combined or concurring negligent acts of the defendants, and that those negligent acts were the approximate cause of the injury, then

it will be your duty to return a verdict for the plaintiff. If, however, you should find that one of the defendants was negligent and that the other was not negligent, then you will find for the plaintiff and against the negligent defendant, and in favor of the defendant who was not negligent." It is contended by appellant that the italicized portion of the instruction *is in effect a statement of the rule res ipsa loquitur* and that while the principle so termed may possibly have applied to defendant Adams, a common carrier, the court erred in attempting to extend its application to appellant. Taking all of the instructions together it is doubtful whether the jury received a hint from the italicized portion of the instruction quoted that there is in existence such a rule as that characterized by the term *res ipsa loqui-tur.* We do not decide that question, however, contenting ourselves with the assertion that, in the interest of clarity alone, the italicized language should not have been given.

[4] It is insisted that the trial court erred in giving an instruction "that intent is not an essential element of negligence. Neither intention to injure the plaintiff nor intention to violate the law, nor an intention to do the act or acts which caused the injury is necessary. It is sufficient if the defendants did an act from which the plaintiff suffered an immediate injury." The only fault found with this instruction is that in the last sentence the word "act" is used without placing the word "negligent" before it. It is entirely clear from the instructions as a whole that in using the word first mentioned the judge intended to refer to a negligent act. The members of the jury could have understood nothing else, as they were instructed explicitly and repeatedly that the plaintiffs could recover against neither defendant unless that defendant was guilty of negligence, but all difficulty would have been obviated if the judge had inserted the word "negligent" before the word "act."

Judgment reversed.

Finlayson, P. J., and Craig, J., concurred.