[S. F. No. 10187. In Bank.—February 2, 1924.]

OTIS POPE, Respondent, v. JACOB HALPERN, Appellant.

[1] MOTOR VEHICLE ACT — HEADLIGHTS — MOTORCYCLES.—The provisions of subdivision "f," section 13, and subsequent sections which are indirectly referred to in subdivision "f" of the Motor Vehicle Act, apply to motorcycles, and by such act the legislature intended that motorcycles should carry at least one lighted lamp giving a light of the same power and so distributed as in the case of automobile lamps.

[2] ID.—NEGLIGENCE—COLLISION BETWEEN AUTOMOBILE AND MOTORCYCLE—SUFFICIENCY OF EVIDENCE.—In this action for damages for injury sustained in a collision of an automobile with a motorcycle it is held that the evidence was sufficient from which the jury might draw an inference that the defendant in operating his automobile was cutting the corner of the street at the time of the collision and was therefore guilty of negligence.

[3] ID. — GUEST IN AUTOMOBILE — CONTRIBUTORY NEGLIGENCE. — The rule is well established that the contributory negligence of the driver of a vehicle is not ordinarily imputed to his passenger or guest, an exception to the rule being that where the parties are engaged in a common or joint enterprise, the contributory negligence of one will bar recovery by either.

[4] ID.—WHEN ENTERPRISE NOT JOINT.—A boy riding on the rear fender of a motorcycle driven by another at the time of its collision with an automobile, who did not participate in the selection of the route or the regulation of the speed of the motorcycle, as of right, but as a mere guest, had no such joint control of the motorcycle as would defeat his action for damages against the driver of the automobile by reason of the contributory negligence of the driver of the motorcycle.

1.  Duty of operator of automobile to display lights, notes, 11 A. L. R. 1226; 38 L. R. A. (N. S.) 489; 51 L. R. A. (N. S.) 996. Effect of failure to show lights on liability for collision between automobile, or automobile and another vehicle, at or near corners of streets or highways, note, L. R. A. 1916A, 749.

2.  Operator of motor vehicle cutting corners as negligence *per se*, note, 6 A. L. R. 321.

3.  On personal care required of one riding in automobile driven by another as affecting his right to recover against a third person, notes, 18 A. L. R. 309; 22 A. L. R. 1294.

**[5]** ID.—RIDING ON FENDER OF MOTORCYCLE—NEGLIGENCE—QUESTION OF FACT.—In such a case the question of whether the decedent, who was a minor, was negligent in riding on the rear fender of the motorcycle under the circumstances of the case was a question for the trial court or jury.

**[6]** ID. — PENAL PROVISIONS OF ACT — LIABILITY OF GUEST. — If a motorcycle is operated without a headlight, the person violating the law is the driver or operator of this motorcycle, and the Motor Vehicle Act does not show an intent to make the passenger or guest criminally liable therefor.

**[7]** ID.—INSTRUCTION—LIGHTS—TIME.—In such a case it was prejudicial error for the court to refuse a requested instruction to the effect that if the accident occurred during the period from a half hour after sunset to a half hour before sunrise, the motorcycle was required to be equipped with a headlight showing a light visible two hundred feet, and give an instruction in the place thereof to the effect that a motorcycle while on a public highway was required to carry a headlight where the streets were not sufficiently lighted to discern objects for a distance of two hundred feet, it being an undisputed fact in the case that the collision occurred about 9:30 o'clock P. M.

APPEAL from a judgment of the Superior Court of Alameda County. A. F. St. Sure, Judge. Reversed.

The facts are stated in the opinion of the court.

Wm. M. Abbott, K. W. Cannon and J. E. Reardon for Appellant.

Stella Donovan and J. W. Henderson for Respondent.

KERRIGAN, J.—This is an appeal under section 953a of the Code of Civil Procedure from a judgment following a verdict in favor of plaintiff for $2,044.50 as damages for the death of his minor son, which resulted from a collision between an automobile driven by defendant and a motorcycle driven by one Clarence Garns, upon which the decedent was riding as a guest.

In arriving at their verdict for the plaintiff the jury thereby resolved in his favor any conflict in the evidence,

5. Imputed negligence of passenger riding in automobile driven by another in case of joint enterprise, notes, Ann. Cas. 1918C, 961; 19 Ann. Cas. 1225; 8 L. R. A. (N. S) 628; L. R. A. 1915B, 955; L. R. A. 1915E, 436.

so that the facts disclosed by the record may, for the purposes of the appeal, be stated as follows: The plaintiff's son, Miles, fourteen years and four months old, was riding on the rear fender of a motorcycle which was driven by his friend, Clarence Garns, westerly along the northerly side of East Twelfth Street, in the city of Oakland, at about 9:45 o'clock P. M. on the twenty-third day of June, 1920. Clarence, who was the owner of the motorcycle, had had some trouble with the light which had been attached to the motorcycle, and a few days before the accident he removed it. On this night, while driving the motorcycle, he was carrying an electric flashlight in his hand at the left handlebar, which flashlight gave one-half the light of an ordinary motorcycle headlight. The deceased was seated on the rear fender, immediately behind the driver's seat, his legs on the left side, his left foot holding on to the rod which supports the seat, his left hand resting in his lap. While thus proceeding, and attempting to cross Fourteenth Avenue, the motorcycle and defendant's automobile collided. The defendant, driving easterly along the southerly side of East Twelfth Street, had reached the intersection of Fourteenth Avenue, and at the time of the collision was attempting to, or had completed, a left turn so as to go in a northerly direction on Fourteenth Avenue. When the vehicles came to a stop the motorcycle was lying under the front left wheel of the automobile at a point about twelve or fifteen feet west of the middle line of Fourteenth Avenue and slightly north of the north curb line of East Twelfth Street. As a result of the collision Miles Pope received injuries causing his death and Clarence Garns' left leg was broken.

The theory upon which plaintiff's case was tried is that the defendant carelessly and negligently operated his automobile by cutting the corner of the intersection of these two streets, in disregard of the express provisions of the Motor Vehicle Act. (Stats. 1915, p. 397.) The defendant's contention is that he did not cut the corner, but that he carefully went out and across the middle line of Fourteenth Avenue before turning to his left and north into Fourteenth Avenue; that the motorcycle was not equipped with a sufficient headlight; that it was driven at an excessive rate of speed, and that the decedent's position upon the motorcycle interfered with the driver in its operation.

The Motor Vehicle Act, in section 13 (subd. A), provides: "Where there is not sufficient light within the lateral boundaries of the public highway to reveal all persons, vehicles or other substantial objects within said boundaries for a distance of at least 200 feet, and at all times during the period from a half hour after sunset to a half hour before sunrise, every automobile while on the public highway shall carry at the front at least two lighted lamps . . . " (Stats. 1919, pp. 191, 206).

The dual character of this provision is to be noted. The obligation to carry the lighted lamps mentioned is partly contingent and partly absolute, depending upon the hour of the day. During the period comprised within "a half hour after sunset to a half hour before sunrise" the obligation is absolute; at any other time within the twenty-four hour day it is contingent upon the condition of light existing within the lateral boundaries of the highway. We call attention to this in passing for the bearing it has upon the instructions given to the jury.

Subdivision (c) of this same section of the Motor Vehicle Act reads as follows: "At the time and under the conditions in this section hereinbefore specified, every motorcycle while on the public highway shall carry at the front at least one lighted lamp . . . " The times and conditions before specified are those contained in the opening sentence of section 13 (a), above referred to, so, reading these two subdivisions together, we find that from a half hour after sunset to a half hour before sunrise every motorcycle while on the public highway must carry a certain kind of headlight, regardless of the condition of the highway with respect to illumination. In passing it is well to note that in subdivision "f" of section 13 an exception is made of a vehicle not in operation on a lighted highway.

[1] The Motor Vehicle Act of 1915, as amended in 1919, specifies the character of headlight which a motor vehicle must carry. The Motor Vehicle Act as enacted in 1915 provided: "At the times and under the conditions hereinbefore specified in this section, every motorcycle or bicycle while on the public highway, whether in operation or otherwise, shall carry one lighted lamp, showing a white light visible under normal atmospheric conditions at least two hundred feet in the direction toward which such motorcycle or bicycle

is faced . . . '' (sec. 13 [b], Stats. 1915, pp. 397, 405). In 1919 this subdivision was amended, and as amended it referred to lights on bicycles only, and the distance at which the light on such bicycles must be visible was increased to three hundred feet (Stats. 1919, pp. 191, 207). In subdivision ''c'' of section 13, as amended, it was provided: ''At the time and under the conditions in this section hereinbefore specified, every motorcycle while on the public highway shall carry at the front at least one lighted lamp which shall give a light of sufficient power and so distributed as provided in subdivision (f) and shall also carry at the rear of such motorcycles a lighted lamp, exhibiting a red light plainly visible under normal atmospheric conditions for a distance of at least two hundred feet towards the rear.'' Subdivision (f), to which we are referred by subdivision (c), reads as follows: ''At the times and under the conditions in this section hereinbefore specified the headlights of all automobiles upon the highways shall give a light of sufficient power and so distributed as provided herein in addition to and irrespective of any other requirements concerning headlights in this section contained. The term 'headlight' as used herein, shall denote any light, located upon any portion of the said motor vehicle other than on the windshield, the windshield supports or top thereof, the rays of which are projected forward, except side lights of not to exceed four candle power; . . . '' Subdivision (f), just quoted, appears to be a prefatory section to the sections which follow, in which are described the tests to be applied to lights on motor vehicles. It is true that in subdivision (f) the word ''automobile'' is used and that in subdivisions (g) and (h) the tests refer to a ''pair of lamps,'' but we feel that the conclusion is inescapable that the legislature intended that motorcycles should carry at least one lighted lamp giving a light of the same power and so distributed as in the case of automobile lamps. It is certain that the legislature did not intend to provide that a motorcycle, a heavier and speedier vehicle than a bicycle, could be operated at night with any kind of light, while in the same act it is provided that a bicycle must carry a light visible three hundred feet. To the contrary, in subdivision (c), just quoted, the legislature, showing that it has in mind motorcycles, enacts that they shall carry a certain kind of light, to be described in

later sections, and we feel justified in holding that these sections (being subdivision [f] and the subsequent sections which are indirectly referred to in subdivision [f]) apply to a motorcycle. In passing it may not be amiss to say that whatever ambiguity existed on this question has been dispelled by the enactment of the Motor Vehicle Act of 1923, which provides that, ''Every motorcycle at the times and under the conditions specified in section ninety-nine shall be equipped with at least one lighted headlight and not more than two, which shall conform to the provisions of sections one hundred and one hundred one, relating to headlights for automobiles.'' (Sec. 103, Stats. 1923, p. 550.) And section 99 of the same act requires that, ''Every vehicle when upon any public highway within this state during the period from a half hour after sunset to a half hour before sunrise and at any other time when there is not sufficient light to render clearly discernible a person, vehicle or other substantial object on the highway at a distance of two hundred feet ahead, shall be equipped with lighted lamps and lighted headlights as herein respectively provided for different classes of vehicles and subject to such exceptions as are set forth in this act.''

[2] As we have already pointed out, the jury having found in plaintiff's favor, we must assume that it accepted the testimony of plaintiff's witnesses tending to show that the defendant in operating his automobile immediately before and at the time of the collision was cutting the corner of the street. While this was contrary to the direct testimony of defendant's witnesses there is evidence in the record upon which such an inference could well be based. If the defendant in fact cut the corner he was guilty of negligence *per se,* and from the record we must assume that the jury found that the defendant did cut the corner and that this negligence was the principal cause of the accident.

The defendant also contends upon this appeal that Garns' negligence, assuming that he was negligent, was imputable to the decedent, and that the decedent was himself guilty of independent negligence in riding upon the rear fender of a motorcycle which was being operated without a headlight and being driven at an excessive rate of speed.

[3] The rule is well established that the contributory negligence of the driver of a vehicle is not ordinarily im-

putable to his passenger or guest (*Bryant* v. *Pacific Elec. Ry. Co.,* 174 Cal. 737 [164 Pac. 385]; *Parmenter* v. *Mc-Dougall,* 172 Cal. 306 [156 Pac. 460]; *Bresee* v. *Los Angeles Traction Co.,* 149 Cal. 131 [5 L. R. A. (N. S.) 1059, 85 Pac. 152]). But an exception to this rule is made in those cases where the parties are engaged in a common or joint enterprise, and in such cases it is held that the contributory negligence of one will bar recovery by either. The decisions are not in accord as to what constitutes a joint or common enterprise, but it has been held in this state that the passenger must exercise some control over the driver, or, in law, may be said to possess the right of such control, before it will be held that they are engaged in a joint enterprise. (*Bryant* v. *Pacific Elec. Ry. Co., supra.*) In *St. Louis etc. Ry. Co.* v. *Bell,* 58 Okl. 84 [L. R. A. 1917A, 543, 159 Pac. 336], the court said: " 'Parties cannot be said to be engaged in a joint enterprise, within the meaning of the law of negligence, unless there be a community of interests in the objects or purposes of the undertaking, and an equal right to direct and govern the movements and conduct of each other with respect thereto. Each must have some voice and right to be heard in its control and management.' " It will be seen from these two decisions that in order that there be such a joint enterprise it is not sufficient merely that the passenger of the machine indicate the route, or that both parties have certain plans in common, such as a "joy ride," but the community of interest must be such that the passenger is entitled to be heard in the control and management of the vehicle. In *Bryant* v. *Pacific Elec. Ry. Co., supra,* the court, after referring to the case of *Wentworth* v. *Town of Waterbury,* 90 Vt. 60 [96 Atl. 334], where apparently the only basis for the imputation of negligence of the driver of an automobile to the plaintiff was the circumstance that they were both engaged in the common purpose of taking two ladies for an afternoon's drive to view a lake, said: "In our opinion, the doctrine of imputable negligence should not be so loosely applied. To do so leaves the law in an uncertain state. The better view is expressed by *Nonn* v. *Chicago City Ry. Co.,* 232 Ill. 378 [122 Am. St. Rep. 114, 83 N. E. 924]: 'There can be no such thing as imputable negligence, except in those cases where such a relation exists as that of master and servant or of principal and agent. In order that

the negligence of one person may be properly imputed to another they must stand in such relation of privity that the maxim *qui facit per alium facit per se* directly applies.' Indeed, no other rule is consistent with section 1714 of the ·Civil Code, wherein it is declared that every one is responsible for an injury occasioned to another by his want of ordinary care 'except so far as the latter has, willfully or by want of ordinary care, *brought the injury upon himself.'* " (Italics ours.)

[4] Tested by these principles, we are of the opinion that the decedent and Garns were not engaged in such a joint enterprise as to bring the decedent within the rule of imputable negligence. The circumstances of this case do not show that the decedent and Garns together had such control and direction over the motorcycle as to be practically in the joint or common possession of it. If the decedent did participate in the selection of the route, or the regulation of the speed of the motorcycle, he did so apparently as a guest, and not as one entitled as of right to be heard in such matters.

These views· are fully supported by the case of *Masterson* v. *Leonard,* 116 Wash. 551 [200 Pac. 320]. In that case two boys riding on a bicycle collided with an automobile. Frank, whose father owned the bicycle, was riding on the handle-bars, and Edward was sitting in the seat of the bicycle, controlling its movement. Edward was a newsboy, and at the time of the accident was on his way to get his papers. Frank, who frequently helped Edward on his paper route, was going along to substitute for Edward in case he became ill. The court held that Edward's negligence was imputable to Frank, but the following quotation clearly shows that its decision was based squarely upon the peculiar facts of the case before it, facts which do not appear in the present case. The court said: "We are of the opinion, in view of the ownership of the bicycle, the general possession of and control over it by Frank, the acquiescing by him in the temporary control over it by Edward for the purpose of conveying them both on this hazardous journey, which we think was their common enterprise or adventure, that the trial court did not err in telling the jury, in effect, that whatever negligence Edward was guilty of, in carrying out this their joint enterprise or adventure, was attributable to

Frank, and became in law his negligence. . . . '' There can be no doubt that the court attached great importance to the fact that Frank had the possession and control of the bicycle, and still had the right to be heard in its control and management even though he had temporarily relinquished control over it.

In the present case the decedent, as already mentioned, did not have such a proprietary interest in the motorcycle as would give him a right to be heard in its management and control, and as there is no evidence that he actually exercised such control, it cannot be said that he and Garns were in the joint or common possession of it. Assuming, therefore, that Garns was guilty of contributory negligence, his negligence was not imputable to the decedent.

[5] Defendant's second contention, that decedent was guilty of independent negligence in riding upon this motorcycle, is worthy of consideration. It is claimed that since Clarence was operating his machine in a negligent manner, the plaintiff was guilty of independent negligence in riding on the motorcycle while it was being so operated. To support this contention defendant relies upon *Lynn* v. *Goodwin*, 170 Cal. 112 [L. R. A. 1915E, 588, 148 Pac. 927], and *Rebillard* v. *Minneapolis, St. P. & S. S. M. Ry. Co.,* 216 Fed. 503 [L. R. A. 1915B, 953, 139 C. C. A. 9]. These decisions are based on the theory that a passenger is negligent if he remains in a dangerous position after having knowledge of the danger. Thus, in *Rebillard* v. *Minneapolis, St. P. & S. S. M. Ry. Co., supra,* it was held that the plaintiff was guilty of contributory negligence in riding in an automobile without lights over a trail with which none of the occupants of the machine were familiar. In *Lynn* v. *Goodwin, supra,* it was decided that the conduct of the plaintiff in riding and in continuing to ride in an automobile when he must have known that the driver was intoxicated established negligence upon his part independent of that of the driver, barring the right of recovery. These cases merely express in another way the general rule that a passenger must at all times use ordinary care for his own safety. In the present case the decedent, being a minor, the question of whether or not he was negligent in riding on this motorcycle under the circumstances of this case was a question for the trial court or jury. (*Sanders* v. *Toberman,* 192

Cal. 13 [218 Pac. 394]; *Mayne* v. *San Diego Electric Ry. Co.,* 179 Cal. 173 [175 Pac. 690], and cases therein cited; *Charves* v. *S. F. Oakland Terminal Rys.,* 44 Cal. App. 221 [186 Pac. 154]; *Carlson* v. *Leonard,* 53 Cal. App. 300 [200 Pac. 40].) Here, under instructions as to the degree of care required of a minor, the question of decedent's alleged negligence was left to the jury, who impliedly found that he was not negligent, and that he had exercised the same degree of care as children of his own age and intelligence ordinarily exercise.

[6] In this connection it must be kept in mind that it was the driver, Garns, and not the decedent, who was violating the provisions of the Motor Vehicle Act, in failing to carry a regulation headlight. The decedent in nowise subjected himself to a penal liability. Section 32 of the act (Stats. 1919, p. 225) provides that any person violating any of its provisions shall be guilty of a misdemeanor. And one of the provisions of the act is that a motorcycle shall be equipped with a headlight. We are of the opinion that if a motorcycle is operated without a headlight, the person violating the law is the driver or operator of such motorcycle. Throughout the Motor Vehicle Act, in discussing various penalties, reference is made to the "driver or operator," or "person in charge or having control" or the "owner," but nowhere is any language used which would show an intent upon the part of the legislature to fasten a criminal liability upon a passenger or guest for an infraction of any of its provisions.

[7] The defendant requested an instruction to the effect that if the accident occurred during the period from a half hour after sunset to a half hour before sunrise, the motorcycle was required to be equipped with a headlight showing a light visible two hundred feet. This instruction was correct in form and in terms in that it expressly declared that it was the duty of the driver of the motorcycle to have a lighted headlight during this period. The court refused this instruction, and gave in place thereof one to the effect that a motorcycle while on the public highway was required to carry a headlight where the streets were not sufficiently lighted to discern objects for a distance of two hundred feet.

This instruction was inapplicable to the case herein, as it is an undisputed fact that the collision occurred about 9:30 o'clock P. M., and we have already pointed out that the obligation of the driver of a motorcycle operated at that hour to carry a headlight of a certain designated power is absolute and is not dependent upon the conditions of light in the street. By this instruction the jury were given a basis for an inference that Garns was not negligent by reason of not carrying said headlight notwithstanding that the statute expressly makes that requirement. Under proper instructions the negligence of Garns would have been plainly apparent to the jury, which would then have been confronted with the question whether the deceased, in riding with Garns under the conceded conditions, was himself guilty of such negligence as to bar a recovery in the present case. The refusal of the trial court, therefore, of the instruction applicable to the facts of the case in favor of one inapplicable thereto, constituted error which, under the circumstances of this case, must be held to be prejudicial. The judgment should therefore be reversed, and it is so ordered.

Lennon, J., Myers, J., Waste, J., Wilbur, C. J., Lawlor, J., and Seawell, J., concurred.