[L. A. No. 8194.  In Bank.—December 11, 1925.]

## EDNA KELLEY, Respondent, v. HODGE TRANSPORTATION SYSTEM (a Corporation), Appellant.

[1] NEGLIGENCE—INJURIES TO GUEST RIDING IN AUTOMOBILE—COLLISION WITH TRUCK — ACTION AGAINST OWNER OF TRUCK — CONTRIBUTORY NEGLIGENCE—EVIDENCE.—In an action by one who was riding as a guest in an automobile against the owner of a truck for damages for personal injuries sustained by plaintiff on account of a collision between said automobile and said truck, the contributory negligence attributable to the driver of the automobile in which plaintiff was riding, if any, would not bar plaintiff's right of recovery against defendant, unless it was shown that plaintiff was guilty of negligence; and in this action there is no evidence in the record that would indicate the plaintiff was guilty of independent negligence in the remotest degree.

[2] PLEADING—ISSUES.—In such action, defendant could not have been misled to its prejudice by the fact that plaintiff's complaint alleged that her injuries were *caused alone* by defendant's negligence, or omitted to jointly charge the driver of the automobile in which plaintiff was riding with negligence, where defendant, by the affirmative allegations of its answer, brought into the case the issue of said driver's alleged negligence and that said driver and plaintiff were engaged in a joint and common enterprise, and the case was tried upon the issue as tendered by defendant.

[3] ID. — LIABILITY OF DRIVERS. — In such action, if the jury believed that both the driver of the automobile in which plaintiff was riding and defendant were negligent, but that plaintiff was a guest of said driver, and, further, that plaintiff was not guilty of negligence, such joint negligence would, if it contributed proximately to the injuries, render either or both liable in damages.

[4] ID. — FINDING — EVIDENCE. — In such action, there being at least substantial evidence pointing to negligence on the part of defendant, and there being no evidence whatever of plaintiff's negligence,

---

1. Contributory negligence of guest injured while riding in automobile, notes 20 A. L. R. 1026; 26 A. L. R. 1428. See, also, 3 Cal. Jur. 848; 2 R. C. L. 1207.

3. Liability of owner or operator of automobile for injury to guest, notes, 20 A. L. R. 1014; 26 A. L. R. 1425. See, also, 19 Cal. Jur. 664.

4. See 19 Cal. Jur. 779.

the finding of the jury in plaintiff's favor cannot be disturbed on appeal.

[5] ID.—CONTRIBUTORY NEGLIGENCE—PLEADING—DENIALS.—The pleading by defendant of negligence on the part of the driver of the automobile in which plaintiff was riding was new matter in avoidance, or constituting a defense, and must, on the trial, be deemed controverted by the opposite party.

[6] ID.—MOTOR VEHICLE ACT—EVIDENCE—INSTRUCTIONS.—In such action, where practically the only question in the case was whether or not the driver of defendant's truck was guilty of negligence by continuing his course from one side of the street into the other in the face of the admitted fact that he saw the driver of the automobile in which plaintiff was riding at some distance prior to the collision and knew or ought to have known that he would soon be in his path without giving an alarm of any kind whatsoever, it is scarcely conceivable that the jury should have been misled by the giving of an instruction that "if they should find from the evidence in the case that defendant at the time and place of the collision herein complained of violated *any* of the provisions of the state Motor Vehicle Act, then it is your duty to find that defendant was guilty of negligence"; but if it may be said that defendant suffered prejudice by such instruction standing alone the prejudice was removed by the giving of other instructions.

[7] ID.—DEFINITION OF TERMS "A MAN OF ORDINARY PRUDENCE," ETC.—INSTRUCTIONS.—The terms "a man of ordinary prudence," and "ordinarily prudent person" and a "reasonable man" are easily understood, but are difficult to define; and in this action an instruction defining such terms is not open to the interpretation that if there be two or more lawful modes or methods by which a lawful act may be performed that a person who in good faith selects one of said modes and injures another in the performance of said act while acting as a reasonably prudent and cautious person, will, nevertheless, be held liable in damages therefor merely because it should thereafter appear that had he selected one of the other lawful modes or methods the injury would not, in all human probability, have happened; nor is there anything in such instruction that should have confused the jury as to what was meant by ·the well-known terms.

[8] ID.—VERDICT—APPEAL.—In such action, it cannot be said on appeal that the verdict is as a matter of law excessive.

[9] ID.—AWARD OF DAMAGES—APPEAL.—Unless it can be said on appeal that the award of damages made by the jury and sustained by the trial court was so grossly disproportionate to any compensa-

5.  See 19 Cal. Jur. 680; 21 Cal. Jur. 163; 21 R. C. L. 555.

9.  Excessive verdicts in actions for personal injuries, note, L. R. A. 1915F, 30.  See, also, 8 Cal. Jur. 837; 8 R. C. L. 673.

tion reasonably warranted by the facts as presented on appeal as to shock the sense of justice and raise at once a presumption that it was the result of passion, prejudice, or corruption, rather than an honest and sober judgment, the appellate court may not exercise the power of revision.

(1) 29 **Cyc.**, p. 550, n. 55.    (2) 31 **Cyc.**, p. 715, n. 57.    (3) 29 **Cyc.**, p. 549, n. 50.    (4) 4 **C. J.**, p. 853, n. 59.    (5) 31 **Cyc.**, p. 242, n. 58.    (6) 38 **Cyc.**, p. 1785, n. 90.    (7) 38 **Cyc.**, p. 1602, n. 58, p. 1686, n. 50.    (8) **17 C. J.**, p. 1096, n. 95.    (9) 4 **C. J.**, p. 872, n. 19.

APPEAL from a judgment of the Superior Court of Los Angeles County. Victor R. McLucas, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. I. Gilbert for Appellant.

Joseph Scott and A. G. Ritter for Respondent.

SEAWELL, J.—The jury in this case awarded the respondent the sum of fifteen thousand dollars as damages for injuries suffered by her from cuts made upon her face and neck by glass as the result of a collision between a Ford coupé driven by James Fisher, a salesman and "courtesy man" in the employ of the Hubbard Auto Sales Company, at the city of Los Angeles, with whom she was riding as a guest, and a very large truck carrying five and one-half tons of freight and drawing a trailer carrying three tons of freight, owned and operated by appellant. The facts of the case are brief and are as follows:

Miss Edna Kelley, the respondent herein, was an unmarried woman of the age of twenty-seven years, a stenographer by occupation, in the employ of the Associated Supply Company in the city of Los Angeles, at a salary of one hundred dollars per month, and who had, for several months prior to the day of the collision, to wit, Sunday evening, December 10, 1922, been accustomed to take pleasure rides upon each Sunday into the suburban districts and country with said James Fisher. During the week preceding the day last mentioned they had been told by a mutual friend that holly-berries were obtainable in the vicinity of Saugus or Newhall, and accordingly, as they had intended to go in some

direction on their usual Sunday outing, upon the suggestion and invitation of Mr. Fisher, planned a trip to Saugus, where it was expected that they would be able to gather, and bring to Miss Kelley's home, holly-berries to be used for Christmas decorations.

Upon passing through the city of San Fernando at about 6 o'clock P. M. on their return trip, Mr. Fisher, in obedience to the traffic laws, paused on Porter Street, which extends in a northerly and southerly direction, before crossing Brand Avenue, at the point where it intersects Porter Street at right angles. The lot on the southwest corner of Porter Street and Brand Avenue is used by the Standard Oil Company as a gas and oil filling station. The station is located in the center of the lot. The entrance into and exit from the station is on Porter Street, near the southerly boundary of the lot, and is some distance southerly from Brand Avenue. The station is illuminated by a system of reflectors so arranged upon poles as to concentrate the light rays upon the station. The illumination is quite bright at the intersection of Brand Avenue and Porter Street, as well as at the station, but the light zone ceases with the limits of the station going southerly. Therefore, a person traveling in a northerly direction would have the benefit of the street and station lights, while one going southerly would, upon reaching the station, be facing an unlighted highway. Southerly from the station, and a few feet distant therefrom, building improvements were being made and building materials were piled into the street at the curb line and lighted lanterns had been placed thereon to warn the traveling public of the partial obstruction to travel. While it was not raining at the time the collision occurred, which was at the hour of about 6 o'clock, an overcast sky added to the darkness that had set in.

The collision occurred at a point on the street which would have been included within the limits of the driveway had its exterior lines been projected into the street. Fisher, after having crossed Brand Avenue, proceeded down Porter Street at a rate of speed variously estimated as ranging from ten to fifteen miles per hour. He was on the west side of Porter Street, which is about forty-five feet wide, and it was his claim that he was proceeding southerly on said street about five feet distant from the westerly curb

line. He observed the headlights of several machines approaching him on Porter Street and also saw the rear lights of machines traveling ahead of him. As he approached the driveway of the oil station he was on a lookout for outgoing machines and his attention was also directed to the obstruction which extended into the street some thirty feet south of the oil station upon which lights had been placed as a warning signal. When he arrived at a point practically opposite to the entrance of the driveway he suddenly found himself confronted with the truck drawing a trailer which had turned from its course on the easterly side of the street to enter the oil station premises. The truck and trailer were approaching the station practically at a right angle. Fisher was then about five feet distant from the truck and both were moving. The truck and trailer were traveling at a speed estimated at not less than nine nor more than fifteen miles per hour. Fisher applied his brakes, but could not avoid the impact. The truck and Ford came together in such a manner that the front fender of the truck came in contact with the radiator of the Ford. No horn was sounded or signal given in any way by the driver of the truck to warn Fisher of his intention to enter the station, although the driver of the truck admitted that he saw Fisher some time before the accident and supposed he would stop, as he thought it easier for the Ford to stop than it would be to stop the truck. The impact caused the Ford to rebound five feet. Miss Kelley, who was seated to the right of Mr. Fisher, was thrown forward with such violence that her face and the upper portion of her body went through the glass windshield. The blood flowed so profusely from the wounds and cuts which she received upon the face and neck as to have almost resulted in her death before medical attendance could be procured. By reason of her extreme weakened condition no anesthetic was administered during the time that the thirty-five or forty stitches were taken to close up the several wounds made upon her face. She remained in a hospital for some two weeks under the treatment of a physician and was later taken to her mother's home, where she remained in a convalescent state for another period of two weeks. At the expiration of a month she resumed her duties as a stenographer.

That respondent was not guilty of contributory negligence and that she was not engaged in a common or joint enter-

prise with Mr. Fisher, under the undisputed evidence in the case, there is not room for a difference of opinion. She was clearly the guest of Fisher. In *Pope* v. *Halpern*, 193 Cal. 168 [223 Pac. 470], this court very clearly pointed out the difference between persons who are engaged in a joint enterprise with another, within the meaning of the law of negligence, and a guest who has no right to be heard in the control and management of an automobile in which he or she is riding. It was there said that "in order that there be such a joint enterprise it is not sufficient merely that the passenger of the machine indicate the route, or that both parties have certain plans in common, such as a 'joy ride,' but the community of interest must be such that the passenger is entitled to be heard in the control and management of the vehicle." Quoting from *Bryant* v. *Pacific Electric Ry. Co.*, 174 Cal. 737 [164 Pac. 385], and making reference to *Wentworth* v. *Town of Waterbury*, 90 Vt. 60 [96 Atl. 334], the court in *Pope* v. *Halpern*, continuing, said that the doctrine of imputed negligence should not be applied to those cases where "the only basis for the imputation of the negligence of the driver of an automobile to the plaintiff was the circumstance that they were both engaged in the common purpose of taking two ladies for an afternoon's drive to view a lake. . . . To do so leaves the law in an uncertain state. The better view is expressed by *Nonn* v. *Chicago City Ry. Co.*, 232 Ill. 378 [122 Am. St. Rep. 114, 83 N. E. 924]: 'There can be no such thing as imputable negligence, except in those cases where such a relation exists as that of master and servant or of principal and agent. In order that the negligence of one person may be properly imputed to another they must stand in such relation of privity that the maxim *qui facit per alium facit per se* directly applies.' Indeed, no other rule is consistent with section 1714 of the Civil Code, wherein it is declared that every one is responsible for an injury occasioned to another by his want of ordinary care 'except so far as the latter has, wilfully or by want of ordinary care, *brought the injury upon himself.*'"

[1]  The respondent did not drive the automobile at any time nor did she exercise any control or management over it whatsoever. Therefore, the contributory negligence attributable to Fisher, if any, would not bar her right of

recovery against appellant, unless it was shown that she was guilty of negligence. There is no evidence in the record that would indicate that respondent was guilty of independent negligence in the remotest degree. She violated no duty to herself or to others and it is not shown that she neglected to do anything that a reasonable person in her situation should have done or that she did anything that could be regarded as negligence on her part under the circumstances of the collision.

The questions presented by the appeal are that the evidence is not supported by the allegations of the complaint; that there was a variance between the allegations of the complaint and the proof; that the evidence does not support the verdict; erroneous instructions on the part of the court; and excessive damages. No reference is made to the part Fisher played in the complaint. The allegation as to appellant is that while plaintiff was riding in a Ford coupé in the city of San Fernando, and was proceeding in a southerly direction on Porter Avenue, near the junction of Porter Avenue and Brand Boulevard in said city, the defendant, its agents, servants, and employees, so negligently, carelessly, and unlawfully operated its motor-truck in approaching the automobile in which plaintiff was riding that said motor-truck ran into and collided with said automobile, thereby shattering the glass in said machine and injuring plaintiff as described in the complaint. [2] The complaint contains the following allegation, which is made the basis of an attack upon the theory that it is not supported by the proofs: "That in said collision, *caused alone* by the negligence of defendants, aforesaid," etc. (Italics supplied.) In addition to the permanent facial disfigurement it was alleged that she was hurt in her health, strength, and activities and received a severe shock to her nervous system, and from the injuries received she has suffered great physical pain and mental anguish on account of the disfigurements which she has and will sustain, and that by reason of her injuries she has been unfit and unable to work at the usual duties of her employment, or any employment, since the time of her injury. Appellant forthwith answered, specifically denying each of the material allegations of the complaint and in addition thereto alleged affirmatively that respondent was engaged in a joint and common enterprise

with the aforesaid Fisher and that each of them exercised joint and common control as to the places that Fisher visited and the speed at which they were driving, and that each of them was careless and negligent in that they failed to keep a proper lookout for automobiles and that the automobile in which they were riding was carelessly and negligently driven by Fisher with the consent and knowledge of plaintiff and that such negligence directly and proximately contributed to the happening of the accident in question.

That which has been heretofore said disposes of the contributory negligence claim imputed to respondent by appellant. The objections made to the allegation of the complaint that the injuries were *caused alone* by the negligence of appellant loses much of the force it may otherwise have had but for the affirmative allegations of the answer which *ex industria* brought into the case the issue of Fisher's alleged negligence. By the answer it is alleged that his negligence wholly caused the collision and that as both he and respondent were engaged in a joint and common enterprise, his negligence was attributable to respondent. But there are two answers to appellant's claim of prejudicial error arising from the pleadings. First, appellant specifically put in issue the alleged. negligence of Fisher as a defense and the case was tried upon the theory that Fisher's negligence and his relation to respondent were material factors in the case. Second, the jury was fully and correctly instructed as to the extent that Fisher's negligence should be made referable to respondent if it should find that they were engaged in a joint or common enterprise. [3] If the jury believed that both Fisher and appellant were negligent, but that respondent was a guest of Fisher, and, further, that she was not guilty of negligence, such joint negligence would, if it contributed proximately to the injuries, render either or both liable in damages. If the injuries of respondent were caused by the negligent act of appellant, its liability would not, so far as respondent is concerned, be lessened by the fact that the negligence of Fisher was also a contributing cause. [4] There being at least substantial evidence pointing to negligence on the part of appellant and there being no evidence whatever of respondent's negligence, the finding of the jury cannot be disturbed. [5] The pleading of Fisher's negligence was

new matter in avoidance, or constituting a defense, and must, on the trial, be deemed controverted by the opposite party. (Code Civ. Proc., sec. 462; *Platner* v. *Vincent,* 194 Cal. 436 [229 Pac. 24]; *Moore* v. *Copp,* 119 Cal. 429 [51 Pac. 630]; *Peck* v. *Noee,* 154 Cal. 351 [97 Pac. 865]; *Jose Realty Co.* v. *Pavlicevich,* 164 Cal. 613 [130 Pac. 15]; *Curtiss* v. *Sprague,* 49 Cal. 301; *Wendling etc. Co.* v. *Glenwood etc. Co.,* 153 Cal. 411 [95 Pac. 1029]; 2 Cal. Jur. 1017.) We conclude that the appellant could not have been misled to its prejudice by the omission to jointly charge Fisher with negligence. The case was tried upon the issue as tendered by appellant.

[6] The court instructed the jury that "if they should find from the evidence in the case that defendant at the time and place of the collision herein complained of violated any of the provisions of the State Motor Vehicle Act, then it is your duty to find that defendant was guilty of negligence." The portion of the instruction objected to contains the words "violated *any* of the provisions of the State Motor Vehicle Act." It is argued that the words within the quotation marks were not limited to those violations of the Motor Vehicle Act upon which respondent relied as the cause of her injuries. It is insisted that by the instruction as given the jury was told that *any* violation of the Motor Vehicle Act, whether or not it had any causative relation to the injuries inflicted, might be considered as a material element in the determination of the question of liability. It is scarcely conceivable that the jury should have been thus misled. Practically the only question in the case was whether or not the driver of the truck was guilty of negligence by continuing his course from one side of the street into the other in the face of the admitted fact that he saw Fisher at some distance prior to the collision and knew, or ought to have known, that he would soon be in his path without giving an alarm of any kind whatsoever. But if it may be said that appellant suffered prejudice by the criticised instruction standing alone the prejudice was removed by the giving of other instructions. The court later told the jury that under the provisions of the Motor Vehicle Act in force at the time of the collision there was no provision of law which prohibited the defendant from operating its truck so that it might be driven into the oil

station as described by the testimony, provided the defendant exercised due care in thus operating his truck so that it might be driven into the oil station, and by otherwise complying with the law regulating the operation of motor vehicles upon public highways. "Therefore if you shall find that the defendant was otherwise operating his truck in a careful and prudent manner and in accordance with the law, you would not be justified in finding for the plaintiff solely for the reason that the defendant operated its truck across the street and into the oil station." As to those violations of the act which the court said constitued negligence *per se* under the Motor Vehicle Act, there was none which was not germane to the duty of the defendant in making the street crossing at the time of the collision. The jury could not have been led into the realm of surmises as to other violations of the Motor Vehicle Act inasmuch as none other was claimed to have occurred.

[7] The court at considerable length instructed the jury as to the meaning of the terms, "a man of ordinary prudence," and "ordinarily prudent person" and a "reasonable man." These terms, like the term "reasonable doubt," are easily understood, but are difficult to define. It is claimed that by giving the instruction the court violated the rule laid down in the case of *Freeman* v. *Adams,* 63 Cal. App. 225 [218 Pac. 600]. In that case the court gave the following instruction: "In determining what a reasonable and prudent man would do under the circumstances you will remember that presumably a jury is composed of such reasonable and prudent persons, and you may each ask yourself, did the defendant do, or fail to do, anything which, under the circumstances, I would not have done or would have done." It is difficult to understand how jurors, if not men of reasonable understanding, would be able to determine whether others whose conduct is under investigation acted in a reasonable manner. The instruction considered in its entirety does not run counter to the instruction given in the Freeman case, nor is it open to the interpretation that if there be two or more lawful modes or methods by which a lawful act may be performed that a person who in good faith selects one of said modes and injures another in the performance of said act while acting as a reasonably prudent and cautious person will, nevertheless, be held liable

in damages therefor merely because it should thereafter appear that had he selected one of the other lawful modes or methods the injury would not, in all human probability, have happened.

It is true, as pointed out by appellant, the court in its effort to enlarge upon the meaning of the term "a man of ordinary prudence," etc., did close one sentence with the interrogatory, "What would I have done under such circumstances? But the phrase was used relative to the conduct of "a person of ordinary prudence," or "a reasonable man." But immediately preceding the clause last above mentioned the court said: "In other words, in measuring the conduct of men and determining whether or not they are negligent in those cases which do not arise from contract . . . we must compare their conduct with that of the average man, or, to use the language we are accustomed to, the ordinary man." And later, it instructed as follows: "The question for you to determine is: 'Under all the facts and circumstances as shown you by the evidence did the parties whose conduct is under consideration act as ordinarily prudent men would act?' If they did not they were negligent and if either failed in this particular he was negligent. It should be observed that the care to be exercised by a person of ordinary prudence varies with the condition under which he is called upon to act. In other words, the care that an ordinarily prudent person must use in the exercise of ordinary prudence in dealing with agencies that because of power of momentum or for any other reason are liable to do great injury is very much greater than under other circumstances." The same general thought runs through the entire charge. We see nothing in the criticised instruction that should have confused the jury as to what was meant by the well-known terms. The meaning of said terms is well understood by the average person and ordinarily it is better to leave their meaning with the understanding of an average man than to hazard the difficulty and danger of an amplification thereof.

[8] The last and most serious question for consideration is whether or not the verdict is as a matter of law excessive. Three surgeons, one of whom treated the respondent, testified that in their opinion the cuts made upon the respondent's face by broken glass had left permanent scars. The nature

of the wounds and the extent to which they disfigured the
face of the respondent, we are unable to determine, as she
has not been in our presence for observation.   We are there-
fore compelled to defer to the opinions of the three phy-
sicians who examined her, and the judgment of the court
and jury to whom the injuries were exhibited.   Doctor J. G.
Mackey, who attended respondent immediately after she re-
ceived the injuries, gave a description of the same.   We
quote from appellant's brief a short but fair *résumé* of his
testimony:

"If she [respondent] will come here, I can show the jury
a whole lot more than I can describe.   There is one cut
here, extending—you cannot see for the hair now—extend-
ing from here down to here.   There is a scar on the left
side of the face, extending from about an inch in the hair
line, down over the ramus of the superior maxilla or superior
jaw. . I mean the cheek bone.   Carrying it down through
the muscles here, cutting the nerve, one branch of the seventh
nerve, that comes across to supply the eyebrow here and then
on the left side of the face again there was a cut here,
over the jaw, and one just below the jaw on the same side,
a very irregular cut there.   Under the chin there was a
horseshoe incision here, about—oh, it was about an inch wide
and about an inch and a half long, as I remember.   It is
hard to see it in this light.   On the other side of the face
there was another deep cut, here, extending thus—pretty
near to the ear, clear across underneath the jaw and coming
over the jaw to very nearly even with the mouth, you see,
here; and then another one on the right cheek, which is very
deep; and then there were numerous little cuts.   I think I
took about thirty-five stitches, all told, in the face; it was
very extensive."

In addition to the foregoing, it was testified to by one of
the witnesses that she received numerous cuts upon the neck.
The doctor who attended her testified that the accident was
a severe shock to her nerves at the time and that she lost
a large amount of blood, and was in the hospital for a period
of about two weeks.   Of course, she suffered pain and there
was some evidence that her nervous system had not, at the
time of trial, entirely recovered from shock.   Evidently
the facial disfigurements constitute the largest element of
damages sustained by the respondent.   She was a young

woman—twenty-seven years of age—unmarried, and doubtless has suffered and will continue to suffer mortification and humiliation such as naturally comes to one of her sex by reason of permanent scars or blemishes upon her face. Both the jury and the trial court had ample opportunity to observe the natural features and comeliness of the respondent and the extent of the facial blemishes and disfigurements which she sustained. The court in passing upon a motion for a new trial was in a position to have reduced the damages allowed by the jury's verdict, had it, in the exercise of a sound discretion, believed the damages excessively large, but instead permitted the verdict of the jury to stand as its appraisement of the damages sustained, and we are not in a position to intelligently challenge the judgment of court and jury with nothing of a substantial character before us to support a contrary conclusion. It is true that no organs of the body were permanently disabled, so far as we are advised. No contradictory evidence was offered by the defense as to the permanent character of the scars which are the result of said injuries. [9] Unless we are able to say that the award of damages made by the jury and sustained by the trial court was so grossly disproportionate to any compensation reasonably warranted by the facts as presented to us on appeal as to shock the sense of justice and raise at once a presumption that it was the result of passion, prejudice, or corruption, rather than an honest and sober judgment, this court may not exercise the power of revision. (8 Cal. Jur. 834; *Holmes* v. *California Crushed Fruit Co.,* 69 Cal. App. 779 [232 Pac. 178]; *Zibbell* v. *Southern Pac. Co.,* 160 Cal. 237 [116 Pac. 513].)

The judgment appealed from is affirmed.

Richards, J., Shenk, J., Lawlor, J., Waste, J., Myers, C. J., and Lennon, J., concurred.

Rehearing denied.