EDNA AVERY

*vs.*

ROBERT L. THOMPSON and RODNEY E. FEYLER, Admrs.,

and

A. FERDINAND AVERY

*vs.*

ROBERT L. THOMPSON and RODNEY E. FEYLER, Admrs.

Knox.    Opinion February 21, 1918.

*General rule as to duty of one having control of an automobile to a person invited to ride therein. Meaning of "negligence" and "due care."*

In two actions of tort, brought the one by the wife, an invited guest in the automobile of the defendant's intestate, and the other by the husband, to recover damages arising from a collision at a grade crossing of a steam railroad when the automobile was struck by a locomotive, it is

*Held:*

1. The legal duty resting upon the intestate arose from a gratuitous undertaking on his part, and was assumed without consideration.

2. The true rule of liability on the part of such voluntary undertaker is that he be required to exercise that degree of care and caution which would be reasonable and proper from the character of the thing undertaken.

3. The thing undertaken here was the transportation of the guest in the intestate's automobile. The act itself involved some danger because the instrumentality is commonly known to be a machine of tremendous power, high speed and quick action. In a sense the guest may be said to have assumed the risks ordinarily arising from these elements, provided the machine is controlled and managed by a reasonably prudent man who will not, by his own want of due care, increase their danger or subject the guest to a newly created danger. The gratuitous undertaker should be mindful of the life and limb of his guest and should not unreasonably expose her to additional peril.

4. Tried by this test the verdict of the jury fastening liability upon the defendants' intestate is not so palpably wrong that it should be set aside.

5. The plaintiff herself under all the circumstances was not guilty of contributory negligence.

6. The damages awarded Mrs. Avery, $5,250., while large, do not impress the court as so extravagant or exorbitant, considering the nature and extent of her injuries, as to require reduction.

7. The damages awarded the husband having regard to the amount of his disbursements and all other elements are excessive. One thousand dollars would be ample compensation.

8. The court did not err in excluding this question put to a civil engineer: "Have you timed a train making the ordinary stop at the station in Thomaston to know whether it could make its ordinary stop at a rate of more than ten miles an hour on Knox Street?" At best the answer could only serve to contradict the locomotive engineer on an immaterial point, and the experimental observations which the witness was asked to narrate, were made at a subsequent date, were not confined to this particular train and were clearly within the excluding rule of res inter alios acta.

Action on the case to recover damages for injuries received through alleged negligence of defendants' intestate. Plea of general issue filed in each case. Verdict for plaintiff in first action in the sum of $5250, and in the second in the sum of $1483.33. Motion for new trial and exceptions filed in each case. Judgment in accordance with opinion.

Case stated in opinion.

*Carl C. Jones,* and *F. W. Halliday,* for plaintiff.

*A. S. Littlefield,* and *R. I. Thompson,* for defendants.

SITTING: CORNISH, C. J., SPEAR, KING, BIRD, HANSON, JJ.

CORNISH, C. J. These cases are of novel impression in this State. They involve the degree of care which the owner and operator of an automobile owes to his invited guest.

N. Webb Thompson, the defendants' intestate, was a resident of Friendship and the owner and driver of an automobile. He invited four ladies to take a ride with him for pleasure from Friendship to Thomaston. The invitation was accepted and on the morning of September 2, 1915, they started on the journey. Miss Mitchell sat on the front seat with Mr. Thompson, the other three ladies on the rear seat, Mrs. Avery, the plaintiff, on the left, Miss Morse in the center and Mrs. Pillsbury on the right. They turned from the Friendship road on to Knox Street in Thomaston and in attempting to pass over a grade crossing about one hundred feet from the turn, the automobile was struck by an express train of the Maine Central

Railroad Company. Mr. Thompson was instantly killed, and Mrs. Avery was thrown out and seriously injured. These suits are brought, the one by Mrs. Avery and the other by her husband, against the estate of Mr. Thompson to recover the damages so sustained. The allegation in the writs is that Mr. Thompson "utterly heedless of the safety of the plaintiff, did then and there negligently, carelessly and recklessly attempt to cross said railroad company's tracks in front of said approaching train, by reason of which negligence, carelessness and recklessness," etc., the plaintiff was injured. Mrs. Avery recovered a verdict of $5,250. and Mr. Avery of $1,483.33. The cases are before this court on motion and a single exception.

MOTION.

1. *Defendant's Negligence.*

In order to determine whether these verdicts are so manifestly contrary to the law and the evidence that they should be set aside by this court, it is necessary to ascertain the measure of duty which Mr. Thompson, the invitor and the host, owed to Mrs. Avery, the invitee and guest, under the circumstances of this case, in other words the degree of care which he was in law bound to exercise for her protection and safety during this gratuitous transportation. We should first inquire what was the legal relation existing between the parties.

Ordinarily in personal actions the duty which is violated is one of two kinds. Either it is one imposed upon the defendant equally with all the world and independent of any act or volition on his part, as for instance the duty of a driver of an automobile toward other travelers on the highway; or it may arise out of contract, either under seal or given for good consideration in consequence of which the defendant has assumed a correlative duty, an illustration of which is the carriage of persons or property for hire. There is, however, a third way in which a legal duty may arise and that is from a gratuitous undertaking on the part of the defendant, a duty voluntarily assumed without consideration, and a duty owed to the plaintiff alone because of the peculiar relations of the parties. The most common instance of this third classification is a gratuitous bailment.

Within this zone, independent of either contract or tort in its larger sense, falls the defendant's duty and therefore the plaintiff's right of action in the case at bar. The defendant (using this term for the sake of convenience) had entered into no contract with the plaintiff

by the terms of which he had agreed to carry her safely from Friendship to Thomaston and return; nor was he obliged to invite her into his car to become his guest. He voluntarily undertook to transport her on this pleasure trip and his liability wholly grew out of this voluntary undertaking and was commensurate with the duty so assumed by him.

The next inquiry is this, to what degree of care and exertion should he be held under these circumstances? Was he bound to convey her safely as would a common carrier? Clearly not. Was he liable for injuries resulting from what has often been termed ordinary negligence, that is a failure to exercise the care of an ordinarily prudent person in the same situation? Or should he be held bound to exercise only a slight degree of care and be liable only in case of reckless and wilful misconduct, what has been often characterized as gross negligence?

There has been much controversy over the use of phrases expressing different degrees of negligence, as slight, ordinary and gross, but it seems to be largely a matter of terminology, and the later decisions while for the most part rejecting the arbitrary distinctions, acknowledge the existence of conditions that increase or diminish the degree of care to be exercised. In *Raymond* v. *Railroad Co.*, 100 Maine, 529, this court said: "It will be observed that the Courts in discussing the above propositions have used the word negligence, instead of the word care, to express the measure of duty. But confusion has arisen from regarding 'negligence' as a positive instead of a negative word. For this reason it is usual to express the duty owed in positive terms by stating what consitutes due care, rather than in negative terms by stating what constitutes negligence which is the unintentional failure to perform a duty required by law. 'Negligence' is the opposite of 'due care'. When due care is found there is no negligence. If there is a want of due care then there is negligence. We are inclined to agree with the great weight of judicial opinion that the attempt to divide negligence, or its opposite due care, into degrees will often lead to confusion and uncertainty. It seems to us therefore that the measure of duty owed by parties in the discharge of their mutual relations, would be better expressed by the use of the term negligence if one prefers a negative definition, or due, reasonable or ordinary care, always having reference to the circumstances and conditions with regard to which the terms are used."

On the other hand the Massachusetts Court in its latest discussion of the subject, closes an elaborate analysis of the authorities with the words: "We are of opinion  . . . .   that in this Commonwealth at any rate degrees of negligence are known to the law." *Massaletti v. Fitzroy*, 228 Mass., 487.

Notwithstanding these antagonistic statements as to definition we doubt not that the two courts from a given state of facts would be apt to reach the same conclusion as to liability.  The difference is more verbal than real.

This is illustrated in the analogous doctrine of gratuitous bailments,—what the earlier writers termed a mandate.  In *Storer* v. *Gowen*, 18 Maine, 174, this court, on the authority of Story on Bailments, stated the law in these words:  "In such a case the bailee or mandatary is responsible only for gross negligence," but added "the care required in a bailment of this kind will depend much upon the nature of the goods delivered.  If money is delivered, it is to receive more care than common property."  Restated in *Dinsmore* v. *Abbott*, 89 Maine, 373, the doctrine appears as follows:  "The burden was upon the plaintiff, whatever the form of action, to show a breach of the implied contract of the defendants as gratuitous bailees, viz: to use ordinary care in keeping the property and to deliver it upon demand, if after using due care, they should have it in their possession."  The language is different in these two opinions but the essential elements of the self-imposed duty undoubtedly remain the same.

Adopting then the modern method of statement we think that the true rule of liability on the part of a voluntary undertaker should be this, that he be required to exercise that degree of care and caution which would seem reasonable and proper from the character of the thing undertaken.

The courts have had occasion to consider the governing rule in several instances as between invitor and invitee in case of gratuitous transportation.

In *Moffat* v. *Bateman*, L. R., 3 P. C., 115, the plaintiff was being conveyed by the defendant in his carriage to perform certain work on the defendant's house.  The plaintiff claimed that because of negligent driving the king bolt of the carriage broke, the horses bolted, the carriage was overturned and he himself was injured.  The court held that as there was no evidence of gross negligence the plaintiff could

not recover. This decision was later commented upon by Smith, L. J., in *Coughlin* v. *Gillison* (1899) 1 Q. B., 145, as follows: "What was there laid down was that if you undertake to drive a man in your carriage, you must not be guilty of gross negligence in driving, if you wish to escape liability for an accident to him while being driven;" and by Collins, L. J., in these words: "The plaintiff had intrusted himself to the defendant to be carried, and there was a clear duty on the part of the bailee towards the bailor not to be guilty of gross negligence causing injury to him."

In *Mayberry* v. *Sivey*, 18 Kan., 291, the plaintiff was an invited guest of the defendant who was driving the team. Against the protestations of the plaintiff and his request to alight, the defendant recklessly raced his horse and a collision ensued. The court held that the defendant was liable, all allegations being proved except a wilful intention on the part of the defendant to throw the plaintiff from the carriage.

In *Siegrist* v. *Arnot*, 10 Mo. App., 197, the plaintiff was an impliedly invited guest in the carriage owned by the defendant, a livery stable keeper, but driven by his servant. The court in holding the defendant liable for injuries caused by the horses running away, laid down the rule thus, through Judge Thompson, author of the learned treatise on negligence: "He (the defendant) was bound to bestow upon the undertaking which he had voluntarily assumed, that degree of care which a prudent man having regard to his social obligations would have bestowed upon it; which, escaping from all definition, simply means that degree of care which a jury may reasonably say he ought to have bestowed under the circumstances and considering that human life was in his keeping. . . . . The governing principle here is that whenever a person undertakes an employment which requires care and skill, whether he undertakes it for reward or gratuitously, a failure to exert the measure of care and skill appropriate to such employment is culpable negligence, and if damages result therefrom an action will lie."

In *Patnode* v. *Foote*, 153 N. Y. App. Div., 494, the plaintiff had been subpoenaed by defendant as a witness in an action in which defendant was a party, and was invited by the defendant to ride with him in his team to the place of trial. In sustaining a verdict for the plaintiff the court say: "There was also evidence, fully warranting the jury in finding that the defendant drove at a reckless speed, against plaintiff's protest, and the collision was due to defendant's carelessness. A

person thus invited to ride stands in the same situation as a bare licensee who enters upon real property which the licensor is under no obligation to make safe or keep so, but who is liable only for active negligence. The obligation of one who invites another to ride is not so great as that of the owner of real property who invites another thereon especially for the purposes of trade or commerce, because under such circumstances the one who gives the invitation is bound to exercise ordinary care to keep the property reasonably safe. Under the above principles therefore one who invites another to ride is not bound to furnish a sound structure or a safe horse. If he should have knowledge that the vehicle was unfit for transportation or the horse unsafe to drive, another element would arise and he might be liable for recklessly inducing another to enter upon danger. These latter elements however are not involved in the present action and the duty of the defendant toward the plaintiff only was to use ordinary care not to increase the danger of her riding with him or to create any new danger."

In *Pigeon* v. *Lane*, 80 Conn., 237, the trial court directed a verdict for the defendants on the ground that the plaintiff and the servant of the defendants through whose want of due care the plaintiff was injured, were fellow servants. The Supreme Court of Errors reversed this ruling and said, obiter, that if the plaintiff was injured while riding upon the sleigh as a mere licensee the defendants could be liable only for her active negligence in causing the injury by which the danger of riding upon the conveyance was increased or a new danger created.

In *Beard* v. *Klusmeier*, 158 Ky., 153, 164 S. W., 319 (314), the defendant was racing at midnight with another automobile. The plaintiff protested and begged to be allowed to alight. The defendant refused and the accident followed. The court held the defendant liable and declared it to be the defendant's duty upon inviting the plaintiff to ride as a guest in his automobile to use ordinary care not to increase the plaintiff's danger nor to create any new danger such as by fast and reckless driving.

In *Fitzjames* v. *Boyd*, 123 Md., 497, 91 At. 547 (1914), the accident was caused by the defendant, against the protest of the plaintiff, attempting to pass another automobile upon a slippery pavement at a rapid pace. The car skidded, struck a telegraph pole, and the plaintiff, an invited guest, was thrown out and injured. The action was

sustained and the doctrine of *Patnode* v. *Foote*, and *Beard* v. *Klusmeier*, before cited, was accepted as the true and correct rule.

In *Perkins, Admr.*, v. *Galloway*, 194 Ala., 265 (1915), 69 So., 875, the rule was expressed as follows: "The express or implied duty of the owner and driver to the occupant of the car is to exercise reasonable care in its operation not to unreasonably expose to danger and injury the occupant by increasing the hazard of that method of travel. He must exercise the care and diligence which a man of reasonable prudence, engaged in like business, would exercise for his own protection and the protection of his family and property, a care which must be reasonably commensurate with the nature and hazards attending this particular mode of travel. Failing in this duty he will be liable to the occupant or guest of the car for injuries the result of such carelessness or lack of diligence."

The last word in Massachusetts is to be found in *Massaletti* v. *Fitzroy*, 228 Mass., 487. The facts in that case were that while staying with the defendant as her guest the plaintiff went out with the defendant in her automobile driven by a chauffeur who was furnished by the owner of the garage where the car was kept. The machine was overturned and the plaintiff injured. The jury found that while driving the machine the chauffeur was the defendant's servant, that the accident was caused by his negligence, but the plaintiff did not contend that the chauffeur was guilty of gross negligence. Thereupon the presiding Justice directed a verdict for the defendant, and this ruling was sustained by the Law Court on the authority of *West* v. *Poor*, 196 Mass., 183, where it was held that a defendant who invites a plaintiff to ride gratis in his carriage is liable to the same extent that a gratuitous bailee is liable, that is only for so called gross negligence. The opinion most learnedly discusses the question of degrees of negligence, as we have before observed, and also the authorities both in England and this country upon the question of gratuitous bailments, overruling *Gill* v. *Middleton*, 105 Mass., 477, where it was held that a landlord who gratuitously undertook to make repairs could be held responsible for lack of ordinary care. In conclusion the court said: "Approaching the question apart from authority we are led to the same conclusion. Justice requires that the one who undertakes to perform a duty gratuitously should not be under the same measure of obligation as one who enters upon the same undertaking for pay. There is an inherent difficulty

in stating the measure of duty which is assumed in the two cases. But justice requires that to make out liability in case of a gratuitous under-taking the plaintiff ought to prove a materially greater degree of negligence than he has to prove where the defendant is to be paid for doing the same thing.  It is a distinction which seventy-five to one hundred and ninety-five years practice in this Commonwealth has shown is not a too definite one to be drawn by the Judge and acted upon by the jury."  Without adopting the terminology of this opinion as to degrees of negligence nor its reasoning which makes the degree of care depend upon the matter of compensation, yet we find in it in some respects a common ground of legal principle.

The foregoing decisions give expression in varying forms to sub-stantially the same fundamental principle and lead here to the same essential inquiry, viz: did the defendant exercise toward his invited guest that degree of care and diligence which would seem reasonable and proper from the character of the thing undertaken?  The thing undertaken was the transportation of the guest in the defendant's automobile.  The act itself involved some danger because the instru-mentality is commonly known to be a machine of tremendous power, high speed and quick action.  All these elements may be supposed to have been within the contemplation of the guest when she accepted the invitation.  In a sense she may be said to have assumed the risks ordinarily arising from these elements, provided the machine is con-trolled and managed by a reasonably prudent man who will not by his own want of due care increase their danger or subject the guest to a newly created danger.  In other words we conceive the true rule to be that the gratuitous undertaker shall be mindful of the life and limb of his guest and shall not unreasonably expose her to additional peril. This would seem to be a sane, sound and workable rule, one consistent with established legal principles and just to both parties.  It leaves the determination of the issue to the jury as a question of fact.

Tried by this test we are constrained to say that the verdict of the jury fastening liability upon the defendant in the case at bar is not so manifestly wrong that it should be set aside.  His conduct bordered upon if it did not actually reach recklessness.  It did not evince that regard for the safety of his passengers which is required.  The jury were warranted in believing that he was familiar with the premises and knew that he was approaching a grade crossing, a place of acknowl-edged danger.  The whistle had been blown and the automatic

bell was ringing.   When within two or three rods of the crossing the plaintiff exclaimed, "the engine!" as the train came in sight around a bend in the road.   Thereupon the defendant slowed the automobile a little, looked up and saw the train and then as he approached within twelve or fifteen feet of the crossing he increased the speed, attempted to cross in front of the oncoming train and the sad catastrophe instantly followed.   His own life was sacrificed, Miss Mitchell lost both feet, and the plaintiff was seriously injured.   We cannot say that the jury erred in finding, as they must have found, that the defendant unreasonably exposed the plaintiff to a terrible hazard, and created a new peril which she could be held neither to have anticipated nor to have assumed.   Such conduct was a breach of duty on his part.

2.   *Plaintiff's alleged contributory negligence.*

The plaintiff cannot be held guilty of contributory negligence, as is earnestly urged by the defendant.   The negligence complained of was the act, not of the railroad company, but of the defendant in the management of the machine, and no act or failure to act on the part of the plaintiff can be deemed the proximate cause of the accident.   She had neither direction nor control of its operation.   That was absolutely within his power.   She neither consented to nor acquiesced in the particular management or mismanagement that caused the tragedy.   She was a stranger in the locality and was sitting quietly on the back seat, in full and justifiable reliance upon his capacity as a competent driver.   She was not inattentive because she was apparently the first to perceive the train and at once gave warning.   He heard her exclamation.   Had he heeded it and stopped, as he might have done, all would have been well.   Instead, he hesitated, then put on speed and plunged rashly into obvious peril, into the very jaws of death.   She was powerless to prevent it.   Clearly, no blame can be attached to the plaintiff.

3.   *Damages.*

The damages awarded Mrs. Avery while large do not impress us as so extravagant or exorbitant as to require reduction by the court. Mrs. Avery was twenty-eight years old.   Her injuries were serious. Objectively they consisted of a scalp wound on the head and a fractured pelvis.   Subjectively they consisted of a nervous shock or collapse with its attendant ills which still remain with her.   She is suffering from a retroverted uterus, and seven months after the

collision she had a miscarriage while three months in pregnancy. The plaintiff's physicians state that in their opinion she can never give birth to a child, because of the changed conditions due to the pelvic break.   Her suffering was intense and her injuries are in a degree permanent.   Under all these circumstances we cannot say that the finding of the jury must be deemed so excessive as to require action on our part.

Mr. Avery's verdict was $1,483.33.   Considering the amount of his legitimate cash disbursements and all other elements, we think one thousand dollars would be ample compensation for all damages sustained by him.

EXCEPTIONS.

The plaintiff introduced the locomotive engineer who testified that at the time and place of accident the train was running at the rate of eight or ten miles an hour.   He further testified that that was his usual speed on that train in approaching that crossing, and it was necessary that the train should not be running at a greater speed at that point in order to make its stop at the station which lies beyond. Another witness, a bystander testified that he did not think the train was going very fast, not faster than it usually did when it came into the station.

The defendant introduced as a witness, a civil engineer, who was asked this question, "Have you timed a train making the ordinary stop at the station in Thomaston to know whether it could make its ordinary stop at a rate of more than ten miles an hour on Knox Street?"   To the exclusion of this interrogatory exception was taken.

There was no error in this ruling.   At best the answer could only serve to contradict the locomotive engineer on an immaterial point, his opinion as to the limit of speed of his train at the crossing in order to make the stop at the station.   It did not reach the actual speed at which the train was moving at the time of the accident and on that point whether the train was going ten miles an hour or faster, the act of the defendant in attempting to cross its path would have been equally reprehensible.   Moreover the experimental observations which the witness was asked to narrate were made at a subsequent date, not confined to this particular train, and were clearly within the excluding rule of res inter alios acta.

Our conclusion therefore is as follows:

In the action brought by Edna Avery the motion and exception are overruled.

In the action brought by A. Ferdinand Avery, the exception is overruled and the motion sustained unless the plaintiff within thirty days from the filing of the certificate of decision files a remittitur of the amount of the verdict above $1,000. If such remittitur is filed, motion overruled.

*So ordered.*