## NICORA *v*. CERVERI

No. 2705

April 5, 1926                              244 P. 897.

1. AUTOMOBILES—EVIDENCE HELD TO SUPPORT FINDING OF NEGLIGENCE IN DRIVING AUTOMOBILE AROUND CURVE, CAUSING INJURY TO PASSENGER.

Where defendant's automobile approached curve at excessive speed, and, in rounding it, skidded and struck guy wire six feet from road, injuring a guest passenger, evidence supported finding that defendant was negligent, and that his negligence was proximate cause of the injuries.

2. APPEAL AND ERROR.

Credibility of witnesses is for the trial court.

3. AUTOMOBILES.

Invited automobile guest must exercise ordinary care for own safety.

4. AUTOMOBILES.

Ordinary care by guest in automobile depends on facts.

5. AUTOMOBILES—EVIDENCE HELD TO SUPPORT FINDING GUEST IN AUTOMOBILE SKIDDING ON CURVE WAS FREE FROM CONTRIBUTORY NEGLIGENCE.

Where a guest passenger, riding in rear seat of defendant's car, was injured when car, in rounding a curve, skidded on to a guy wire near edge of road, evidence supported finding that passenger was free from contributory negligence.

6. NEGLIGENCE—NEGLIGENCE OF AUTOMOBILE DRIVER HELD NOT IMPUTABLE TO PASSENGER.

Where an invited passenger, riding in defendant's car, was injured on a pleasure trip, *held* that defendant's negligence was not imputable to her on theory of joint enterprise, since she did not have equal right to direct route and manner of going.

7. DAMAGES.

Award of $3,600 to married woman for injured finger, causing permanent stiffness, and fractured pelvis, causing shortening of leg and permanent lameness, *held* not excessive.

See (1, 3, 4, 5) 28 Cyc. p. 41, n. 46 (new) ; p. 47, n. 20; p. 48, n. 28; (2) 4 C. J. sec. 2833, p. 484, n. 36; (6) 29 Cyc. p. 543, n. 9; p. 549, n. 50; p. 550, n. 55; (7) 17 C. J. sec. 408, p. 1091, n. 85.

APPEAL from Second Judicial District Court, Washoe County; *Thomas F. Moran*, Judge.

Action by Lazzaro Cerveri and Teresa Cerveri against A. Nicora. From a judgment for plaintiffs, defendant appeals. **Affirmed.**

*W. M. Kearney,* for Appellant:

Where driver heeds request of guest to go fast, management of car is concurrent act of driver and guest, they are engaged in joint enterprise, negligence of driver is imputed to guest, and he cannot recover damages if injury results. Langley v. S. R. Co., 101 S. E. 286; Routledge v. Auto Co., 95 S. W. 749.

Where guest knows danger but remains silent and makes no effort to reduce it, he is guilty of contributory negligence. Bauer v. Tougaw, 224 P. 20; Hardie v. Barrett, 101 A. 75.

Law frowns upon one who laughs in face of danger but, after being injured, seeks to blame creator of such danger. City v. Thuis, 63 N. E. 315; Bush v. R. R. Co., 64 P. 624.

Guest in car driven at excessive speed should caution driver of danger; protest against it, and unless delivered from it, should quit car, if that may be done with safety, or direct vehicle to be stopped, and when stopped, get out. Clark v. Traver, 200 N. Y. S. 52; Jepson v. C. S. Ry., 129 N. Y. S. 233.

Findings of trial court are not necessarily binding on court of review, but may be set aside when clearly against weight of evidence if productive of injustice. Thuringer v. Traston, 144 P. 866; Burch v. S. P. Co., 32 Nev. 75.

Res ipsa loquitur cannot apply when facts are observed and testified to. Then there is no occasion for inference. Baldwin v. Smitherman, 88 S. E. 854; Hennekes v. Beetz, 217 S. W. 533.

*S. H. Rosenthal* and *L. D. Summerfield,* for Respondents:

Being successful in lower court, we should have evidence considered as proved, under elemental rule that where evidence conflicts, findings will not be disturbed.

Driver is liable for negligence causing injury to guest. Huddy on Automobiles (6th ed.), sec. 678; Babbitt, Motor Vehicles (3d ed.), sec. 1598.

Unreasonable speed is in itself negligence.   Huddy, sec. 305; Babbitt, sec. 1308.

Losing control through excessive speed on curve shows negligence.   Huddy, sec. 326; Berry (4th ed.), sec. 160.

Res ipsa loquitur has been applied in similar situation.   Lawrence v. Pickwick Stages, 229 P. 885.

Decisions are not consistent as to when passenger has any control.   In many cases mere guest has no such control as to charge him with negligence at failure to protest against driver's acts.   Better authority relieves guest from stricter obligation.   Drivers resent interference; guests feel great reluctance to protest.   Being invited he sits back and leaves driving to driver.   Any duty imposed on passenger should be confined to warning of danger unseen by driver, or protesting when driving is so reckless no sane person would risk remaining in car.   Babbitt, sec. 1622.

## OPINION

By the Court, DUCKER, J.:

The court in this case awarded the respondents the sum of $3,600 as compensatory damages suffered by the respondent Teresa Cerveri as the result of an automobile driven by appellant, with whom she was riding as a guest, striking the guy wire of a telephone pole.   The court found that appellant was negligent, in that he was driving at an unreasonable and excessive rate of speed around a right angle turn of the county highway in an effort to escape from a police officer who had signaled him to stop.

The parties reside in the city of Reno.   On Sunday afternoon, June 1, 1924, they went for a ride in appellant's automobile.   Appellant drove the machine, and on the front seat with him were his young daughter and Joe Sessano, a guest of the former.   Appellant's wife, Mrs. Cerveri, and her little daughter occupied the rear seat.   They left Reno, going to Bowers Mansion, and,

returning to Reno, passed through this city, and went to the city of Sparks. Here Sessano left the automobile, and appellant started to drive back to Reno. He reached Fifteenth Street in Sparks, and continued to where Fifteenth Street connects by a right angle turn with the county highway leading west to Reno. There was a telephone pole about six feet north of the point where the northern line of the county highway meets the curve. A guy wire extended from the pole to the ground at a point the same distance north of the highway. Appellant drove around the turn, and the right side of the automobile struck the guy wire. The impact stopped the machine, but did not overturn it. None of the occupants were thrown from their seats, and none were hurt, except Mrs. Cerveri, who sustained severe injuries. She was unable to get out of the automobile, and was removed and taken to a physician in Reno. It was disclosed that the third finger of her right hand was torn down deeply into the bone, and her pelvis was fractured. She suffered considerable pain. She remained in the hospital for over a month, and at the time of the trial was still being treated by a doctor. By reason of the injury to her finger it will be permanently stiff. As a result of the fractured pelvis there is a shortening of three-quarters of an inch or an inch of the right leg. She will always walk lame, and may probably require the use of a cane for the rest of her life.

1. Appellant contends that the accident was unavoidable. He testified that at no time on his return from the place in Sparks where Sessano left the automobile to the curve on Fifteenth Street was he traveling in excess of 25 miles an hour. Before he reached the curve he saw two automobiles coming towards him almost abreast on the county highway about 25 feet from the curve. To avoid a collision, he was obliged to make a wide turn. He slowed down to about 18 or 20 miles an hour, applied the brakes, and the automobile skidded striking the guy wire.

Mrs. Nicora, the wife of the appellant, was a witness in his behalf. She did not testify as to speed of the

automobile in Sparks, except to say that Mrs. Cerveri was urging appellant to go faster, and that sometimes he would go faster at her request, but slowed down on the curves.

Appellant was driving a 1923 model Buick car. Two witnesses connected with the Heidtman Buick Agency, who had had considerable experience in driving automobiles, testified to demonstrations made by them in driving a Buick car of the same model as appellant's around the curve. In substance, their testimony in part was to the effect that, on account of a certain peculiarity of the curve, an expert driver could not drive around it at a greater speed than 20 miles an hour and remain on the pavement, or faster than 25 miles an hour without danger of overturning, and that one who was not a good driver could not hold the car on the pavement at 20 miles an hour. One of these witnesses also testified that one could not drive an automobile safely around the corner from C Street into Fifteenth Street at 25 miles an hour. He said also that the tendency of an automobile making this turn would be to slide sideways and throw up a lot of dust and dirt. This witness was the manager of the Heidtman Buick Agency, and had sold the automobile to appellant. He testified that it had traveled 50,000 miles before it was purchased by appellant, and that a Buick car of that type, used to that extent, could not, in his opinion, run at a greater rate of speed than about 40 miles an hour.

Respondents contend that their evidence established the appellant's negligence, and that they are therefore entitled to the benefit of the general rule that, where there is a conflict of evidence, the findings of the lower court cannot be disturbed. Besides Mrs. Cerveri, four witnesses testified on the part of respondents as to the speed with which appellant's automobile was traveling through Sparks shortly before the accident happened. According to them, he went up C Street and turned into Fifteenth Street. When he was about five blocks distant from Fifteenth Street, a traffic officer whistled for him to stop and, on his failing to obey the signal, the

former mounted his motorcycle and pursued him. The traffic officer testified that when he whistled appellant was traveling about 35 miles an hour going west on C Street. When he whistled appellant looked squarely at him and increased his speed. The officer estimated the speed of the automobile when it reached Fifteenth Street to be between 40 and 50 miles an hour. The officer was then about a block behind him, and was traveling between 50 and 60 miles an hour. When the officer turned into Fifteenth Street, he saw appellant's automobile at the point where it struck the wire. This point is distant from the corner of C Street and Fifteenth Street the length of two blocks and the width of two streets. The blocks are about 300 feet long.

Another witness for respondents, a locomotive engineer, testified that he was on the front porch of his residence on C Street when appellant drove by. The witness saw the officer, and heard him whistle. He estimated that appellant was traveling about 40 miles an hour. He increased his speed when the officer whistled, and increased it as he proceeded up C Street. He turned into Fifteenth Street. The witness judged that appellant was driving 60 miles an hour when he turned into Fifteenth Street.

Two other witnesses saw appellant driving on Fifteenth Street. One of them testified that the automobile was traveling between 35 and 40 miles an hour when the officer whistled. The other said it was traveling between 40 and 45 miles an hour when he saw it, and was increasing in speed.

The sheriff of Washoe County was a witness on behalf of respondents. He had driven from Reno to Sparks, and was driving south on Fifteenth Street. He had nearly reached the corner of C Street when he observed the appellant coming out of the street. He testified further that, when appellant turned from C Street into Fifteenth Street, his car threw up a lot of dust and came near to turning over. He judged that appellant's car was going between 35 and 40 miles an hour when it

passed him, and seemed to be picking up its speed as it approached him. He also saw the traffic officer in pursuit. About 10 minutes later the sheriff returned and went to the scene of the accident. In regard to his observations there he testified that appellant's car was right side up. He thought that all four wheels were off the pavement, and observed no damage to the car, except a broken windshield. "I could see," he said, "where the car slid on the pavement for 30 or 40 feet. It looked like the same car where it slid on the pavement."

In substance, Mrs. Cerveri testified that, after appellant let Sessano out at Sparks, he drove very fast; that she looked at the speedometer several times, and saw it registered 55 miles; that the automobile was traveling 55 miles an hour when it went into the ditch. She further testified that she heard the traffic officer whistle and saw him coming behind. She testified also that she told appellant that the police officer was right behind him and to stop; and that appellant replied: "I know the police officer is coming up, and I want to go faster, so I won't pay no fine." She said that he did go faster. Clearly, the foregoing summary presents a conflict of evidence with substantial evidence supporting the finding of the court on the issue of appellant's negligence.

No witness testified as to how rapidly the automobile was running on or near the curve where the accident happened, except Mrs. Cerveri and appellant, and their evidence is in sharp conflict. If the speed of the automobile there was 55 miles an hour, or approximately that, the trial court was justified in concluding, as it did, that such fast driving amounted to negligence on the part of the appellant, and was the proximate cause of the injuries sustained by respondent. The highway is a well-traveled one. This may be inferred from the fact that it connects the cities of Reno and Sparks, and from the facts that at the time the accident happened there were at least four automobiles traveling on the highway at Fifteenth Street near the curve, and a large number of cars collected at the scene of the accident

shortly afterwards. This was a right angle turn, and, according to two expert drivers who made demonstrations there, a skillful driver could not drive around it safely at a greater speed than 20 miles an hour. One of these witnesses testified that an ordinary driver could probably hold his car on the road at about 15 miles an hour. Appellant was a driver of little experience. To use his own expression, the automobile he was driving was the first he had his hands on, and it appears he had only been driving that during the four months he owned it prior to the accident.

The testimony of respondent's witnesses tends to show that appellant drove at a fast rate of speed through C Street and down Fifteenth Street. Their estimates range from 35 to 60 miles an hour. The manager of the Buick agency, as we have previously stated, was of the opinion that the turn from C Street into Fifteenth Street could not be made safely by an automobile going 25 miles an hour. The sheriff's testimony tends to show that appellant made this turn recklessly; that his automobile came near to turning over at the turn, and immediately afterwards was going between 35 and 40 miles an hour, and was increasing its speed. During all of this course appellant was pursued by a traffic officer on a motorcycle, and, according to Mrs. Cerveri, had knowledge of the pursuit, and was endeavoring to escape.

These circumstances tended to show that, when the accident occurred, appellant was not exercising ordinary care in managing his automobile. An inexperienced autoist, driving through a city at a high rate of speed, pursued by a traffic officer from whom he is endeavoring to escape, suddenly confronted on a sharp turn by two automobiles coming abreast, does not inspire confidence of that mental poise essential to the exercise of reasonable care. The undisputed testimony of the two expert drivers to the effect that a skillful driver could not drive an automobile around the curve and keep it on the pavement at a higher rate of speed than 20 miles an hour is not sufficient to disprove negligence. The car was off,

or almost off, the pavement when it stopped. What effect the striking of the guy wire may have had in preventing it from going further off the pavement, or of turning over, no one can tell. Moreover, conceding the fact, which their testimony and appellant's testimony tends to prove, that he was traveling 18 or 20 miles an hour when the accident happened, the fact, which the testimony of the other witnesses tends to establish, that he was going at a high rate of speed just before he reached the curve would have a tendency to show his inability to suddenly slow down when confronted with an emergency with the same care that he otherwise might have exercised had he been proceeding at a moderate gait. This is especially true of an inexperienced driver. The sheriff was of the opinion that appellant's car slid on the pavement for 30 or 40 feet.

The trial court found that there was no contributory negligence on the part of respondent Mrs. Cerveri. This finding is also sustained by substantial evidence. Appellant disputes this. It is contended that the testimony of appellant and his wife shows that during the entire trip Mrs. Cerveri repeatedly urged appellant to drive faster, and that her insistence on fast driving amounts to contributory negligence. While the record discloses that this testimony was not denied by Mrs. Cerveri in detail, it shows that it was denied by her generally. She was asked the question: "On June 1, 1924, at any time, did you tell Mr. Nicora what to do while you were riding with him?" The answer was: "No." She also declared that she asked appellant to permit her to get out three different times as they were passing through Reno on the way to Sparks, and assigned as a reason for the request that he was driving too fast. She testified further that he would not stop and permit her to get out and walk home as she requested him to do. She also testified, as we have previously stated, that on the return from Sparks, when she heard the traffic officer whistle, she told appellant to stop— that the police officer was right behind. So on the whole of her testimony we do not think that the claim that her

insistence on fast driving was not substantially denied, is sustained. What would be a correct conclusion of law under the facts of this case, if it appeared without contradiction that Mrs. Cerveri was urging appellant to drive fast at or near the scene of the accident, it is unnecessary to state. Such a case is not presented by the evidence. Consequently we need not comment on the authorities presented on this theory.

2-5. On the question of contributory negligence as well as on appellant's negligence, appellant insists that Mrs. Cerveri's testimony is so contradictory and so refuted by other testimony as to render it unworthy of belief, and that it does not therefore amount to substantial evidence in support of either of the findings. We do not share this view. The circumstances in this regard pointed out by counsel in his argument went to the credibility of the witness, and were for the trial court. Mrs. Cerveri had an opportunity to leave the automobile when it stopped in Sparks, and it is contended that by her failure to do so she acquiesced in appellant's fast driving, and cannot recover. Stated in general terms, the duty imposed by law upon Mrs. Cerveri as a guest in the automobile was the exercise of ordinary care for her own safety. What constitutes such ordinary care on the part of an invited guest in an automobile is dependent upon the facts and circumstances of each case. We are not prepared to say that the evidence up to the point of the stoppage of the car in Sparks is sufficient to charge her with negligence in not leaving the automobile. Up to this point there is no evidence of excessively fast driving or reckless driving. True, Mrs. Cerveri said she wished to get out in Reno because he was driving too fast, but she did not say how fast, or testify to any fact from which excessive speed under the circumstances could be inferred. As to the speed of the automobile on the return from Bowers Mansion to Reno, the appellant testified as follows:

"And anybody coming I slow down to 20, 25 miles like

that. Any time nobody in the road I go a little faster, about, 30, 35 miles."

This testimony is not contradicted. Thirty or thirty-five miles on a clear highway may have been too fast to suit Mrs. Cerveri, but it does not follow that because she did not get out at the first opportunity thereafter she acquiesced in the kind of driving that the evidence of respondent's witnesses tends to show appellant exhibited on the return from Sparks. Moreover, according to her testimony, she did all she could to prevent it. She did more than make a mild protest. She called on the appellant to stop in obedience to the command of the traffic officer.

**6.** It is contended that appellant's negligence is imputable to Mrs. Cerveri, for the reason that they were engaged in a joint enterprise; namely, a pleasure trip for the mutual benefit of each. This contention is resolved against appellant by the findings of the trial court. The court found that there is evidence to sustain the finding that Mrs. Cerveri was an invited guest. The automobile belonged to appellant. Mrs. Cerveri had no proprietary interest in it, and consequently no right of control over the driver who owned it. But it is claimed that she assumed control over the appellant by directing him to drive faster. This phase of the evidence was rejected by the trial court when it found that she at all times and under all circumstances leading up to and surrounding said accident exercised due care and caution. But, conceding that she did, as claimed, direct the driver to drive faster, said action would not show that she was engaged in a joint enterprise with appellant. While the decisions are not harmonious as to what constitutes a joint enterprise within the rule of imputable negligence, we think the true rule is stated in 20 R. C. L. p. 150:

"Parties cannot be said to be engaged in a joint enterprise, within the meaning of the law of negligence, unless there be a community of interests in the objects or purposes of the undertaking, and an equal right to direct

and govern the movements and conduct of each other with respect thereto. Each must have some voice and right to be heard in its control and management."

Appellant and Mrs. Cerveri, as well as the other occupants, had the common purpose of a pleasure trip, but the other elements required by the rule to constitute a joint enterprise, that is, an equal right on the part of Mrs. Cerveri to direct the route to be traveled and the manner of going, was entirely lacking. Appellant had the exclusive right in this regard. The foregoing rule was adopted in Pope v. Halpern, 223 P. 470, 193 Cal. 168.

The facts of that case disclose that the plaintiff's minor son was killed while riding on the rear fender of a motorcycle operated by a friend when the motorcycle collided with an automobile. It was contended that the negligence of the driver of the motorcycle was imputable to plaintiff's son. The court held that they were not engaged in such a joint enterprise as to bring the decedent within the rule of imputable negligence. The court said:

"The circumstances of this case do not show that the decedent and Garns together had such control and direction over the motorcycle as to be practically in the joint or common possession of it. If the decedent did participate in the selection of the route, or the regulation of the speed of the motorcycle, he did so apparently as a guest, and not as one entitled as of right to be heard in such matters."

And again:

" * * * it is not sufficient merely that the passenger of the machine indicate the route, or that both parties have certain plans in common, such as a 'joy ride,' but the community of interest must be such that the passenger is entitled to be heard in the control and management of the vehicle."

This is a well-reasoned case, and, in our opinion, correctly states the law as to the imputation of negligence on account of a joint enterprise. The ruling of the court in Wentworth v. Town of Waterbury, 96 A. 334, 90 Vt. 60, cited by appellant on this question, is

repudiated by Pope v. Halpern, supra, and also by a former decision of that court. In Kelly v. Hodge Transportation System (Cal. Sup.), 242 P. 76, the same doctrine is approved.

7. We have examined the evidence as to the damages sustained by Mrs. Cerveri, and are of the opinion that the amount awarded by the court is not excessive.

The judgment.is affirmed.