# THORNE Et Al. *v.* LAMPROS

No. 2848

June 5, 1930.                                              288 P. 601.

*Thatcher & Woodburn,* for Appellant:

418

*John S. Sinai,* for Respondents:

## OPINION

By the Court, DUCKER, C. J.:

Plaintiffs brought this action to recover damages for injuries alleged to have been caused by reason of the careless and negligent driving of an automobile, by defendant, in which the plaintiff Mrs. Edith Thorne was riding as an invited guest of defendant. The defendant denied all allegations imputing negligence. The case was tried before the court without a jury. The court found that the defendant was grossly negligent in operating the automobile at the time of the accident as the result of which Mrs. Thorne sustained serious and permanent injuries, and entered judgment in her favor for $11,764.75. Defendant has appealed from the judgment and order denying his motion for a new trial.

The defendant is the son-in-law of the plaintiff Mrs. Thorne, having married her daughter since the accident. The accident occurred on December 11, 1927, on the state highway between Reno and Lawton Springs. The automobile was driven by defendant. He was traveling toward Reno, and when a short distance east of Lawton Springs passed an automobile going in the same direction. Immediately after passing the car defendant's automobile swerved to the right of the highway and back to the left and turned over. Mrs. Thorne was seriously injured.

The facts of the case were established by the plaintiffs. Defendant did not testify in his own behalf or produce any witnesses or evidence in his defense. He contends that as Mrs. Thorne was an invited guest he

owed her only slight care in the operation of his automobile, and that she cannot recover unless the evidence shows that he was guilty of gross or wanton negligence. He contends that the evidence did not warrant the court in finding negligence of this degree.

■ It is well established that the driver of an automobile is liable for injuries received by a guest through the driver's negligence. We so held in Nicora v. Cerveri, 49 Nev. 261, 244 P. 897, and upon evidence which tended to show that when the accident occurred the appellant was not exercising ordinary care in managing his automobile.

■ The question presented here, that the law exacts from the operator of an automobile a lesser degree of care for the protection of a guest than ordinary and reasonable care, was not raised in the former case. This rule, which appellant seeks to have adopted, is the rule in some jurisdictions, but the cases so holding are relatively few to the many holding the driver to a higher degree of care.

The rule is established by the great weight of authority that the operator of an automobile who invites another to ride with him owes his guest the duty to operate his machine with reasonable care. Galloway v. Perkins, 198 Ala. 658, 73 So. 956; Central Copper Co. v. Klefisch (Ariz.), 270 P. 629; Spring v. McCabe, 53 Cal. App. 330, 200 P. 41; Warput v. Reading Coal Co., 250 Ill. App. 450; Beard v. Klusmeier, 158 Ky. 153, 164 S. W. 319, 50 L. R. A. (N. S.) 1100; Fitzjarrell v. Boyd, 123 Md. 497, 91 A. 547; Roy v. Kirn, 208 Mich. 571, 175 N. W. 475; Avery v. Thompson, 117 Me. 120, 103 A. 4, L. R. A. 1918D, 205, Ann. Cas. 1918E, 1122; Bauer v. Griess, 105 Neb. 381, 181 N. W. 156; Mackenzie v. Oakley, 94 N. J. Law, 66, 108 A. 771; Patnode v. Foote, 153 App. Div. 494, 138 N. Y. S. 221; Stewart v. Houk, 127 Or. 589, 271 P. 998, 272 P. 893, 61 A. L. R. 1236; Tennessee C. R. Co. v. Vanhoy, 143 Tenn. 312, 226 S. W. 225. Babbitt Motor Vehicles (3d ed.), 1598; Berry on Automobiles (6th ed.), sec. 692; 42 C. J. p. 1055, note 36; Huddy on Automobiles (8th ed.), sec. 802.

We are disposed to accept the prevailing view which to us seems to sanction a juster rule than that the owner or operator of an automobile merely owes to his guest the duty of refraining from wanton, intentional, or willful misconduct. When " * * * a person rightfully entrusts his person to the care of the owner of a vehicle, without any voice as to how the vehicle shall be operated, the owner owes to him the duty of exercising ordinary care for his safety." Warput v. Reading Coal Co. supra.

The duty which the owner or operator of an automobile is charged by law with exercising toward an invited guest is clearly and accurately expressed by the court in Perkins v. Galloway, 194 Ala. 265, 69 So. 875, 877, L. R. A. 1916E, 1190, in the following language: "The express or implied duty of the owner and driver to the occupant of the car is to exercise reasonable care in its operation not to unreasonably expose to danger and injury the occupant by increasing the hazard of that method of travel. He must exercise the care and diligence which a man of reasonable prudence, engaged in like business, would exercise for his own protection and the protection of his family and property—a care which must be reasonably commensurate with the nature and hazards attending this particular mode of travel."

As we hold that the exercise of ordinary and reasonable care is the measure of defendant's duty in this case, we need not determine whether the evidence warranted the trial court in finding him grossly negligent. It is amply sufficient to show want of ordinary care.

As previously stated, there was no denial of the testimony of plaintiff's witnesses. It was admitted in the answer that Mrs. Thorne had no part in the driving or operating of the automobile or any control over the operating or driving of the same. Mrs. Thorne testified that the defendant invited her to ride with him in his automobile on the afternoon of December 11, 1927, and that the accident occurred on the highway near Lawtons as they were returning to Reno just after defendant had driven past a car traveling in the same

direction. Her testimony as to the circumstances immediately surrounding the accident was substantially that defendant drove past the other car at a speed which she judged to be about 45 miles per hour; that when he got past he lost control of his automobile and the wheels of the machine struck the soft dirt off the pavement; that the automobile then swung back across the pavement and turned over; that there was snow on the ground off the pavement and the ground was soft and wet. She testified further that as they were passing she thought he was going to hit the other car and screamed at him, "Oh, Mr. Lampros, shut off the gas," but that the car went faster all the time. Her version of the way in which the accident happened is substantially corroborated by two witnesses who were in the other car. Victor Partipilo, one of these witnesses, testified that defendant's automobile was going between 35 and 45 miles an hour when it passed the automobile in which he and his family were riding. Partipilo related the circumstances as follows:

"He tried to pass us and he blew his horn and we got off the road as much as possible and he passed—he tried to pass; just as he tried to pass he made for our car, you see, he was within a foot of our car, coming hitting us, so the boy that was driving the car seen that he was getting the wheel close and we got off the road on the second attempt that he made. The road that he got on was very soft, was muddy, had been raining it looked to me like afterwards, I got off and looked where he tried to pass, and his hind wheel sank right into the soft dirt. And then he made for the road again, and just in about forty-five per cent angle, cut right straight across—looked like he was going off on the other side of the road. He didn't do that. Just as he got on the other side of the road he must have turned his wheel to bring the car back on the road, and he came back on, then the next I seen he tipped upside down. * * * After we saw his car that he start to zigzag off the road and on the road; why we got off the road, half way off the road; our car was half off the road and half on the

concrete. * * * Well, he was coming to pass us. He made the pass, took a short turn and we saw his car almost going to hit the front end of our car and we got off the road. Then he went on this way, cut right in front of us, and he made this angle on the turn to get back on the road, then his car tipped over. * * * As I understand it he zigzagged into the mud, then turned sharply to the right, and on that turn turned over.

"Q. What happened to the car when it turned over? A. Pretty well smashed up. All his lights and fenders, and the people that were in the car, they were all on the highway there. The car went back on its wheels again and all the passengers were on the highway."

He was asked on cross-examination if either car hit the other, and answered: "No, we didn't hit at all. I hit the fence. That is where we stopped. My wheels hit the fence and stopped."

The witness described the circumstances in rather broken language, but the substance of the testimony seems to be that defendant passed this car driving at a speed of between 35 and 45 miles an hour and passed within about a foot of their car; so close that they were forced off the highway and against a fence in order to avert a crash; that defendant, on passing, cut his car across to the right so that the wheels went off the pavement into the soft mud; that he then turned sharply to the left across the pavement, attempted to turn it back again toward the right, when the car turned over.

The witness is corroborated by Louis Pierotti, who was driving the car that defendant passed. Pierotti testified that defendant was driving around 40 miles an hour when he passed; that he passed just as they were coming out of a curve; that the road on the sides was soft and muddy; that he thought defendant was going to bump him when he passed, and witness drove into the fence and stopped; that when defendant passed he swerved into the middle of the road, went off to the right side, and made a sharp turn to the left and tipped over.

The foregoing undisputed testimony is amply sufficient to have warranted the trial court in finding that the defendant was not exercising that due care in the management of his automobile which the situation demanded when the accident happened.

■ It is contended that plaintiff's testimony shows that Mrs. Thorne was guilty of contributory negligence, but there is nothing in this contention. It is based upon that part of Mrs. Thorne's testimony in which she stated that before the accident defendant told her that something had gone wrong with the steering gear and he had had the car in the garage. It is argued that this testimony shows that she knew that the steering gear was in a defective and dangerous condition when she accepted defendant's invitation to ride with him. We do not think it has any tendency to prove such knowledge. Some objections are made in appellant's briefs as to the ruling of the trial court during the progress of the trial. We find no merit in them.

The judgment is affirmed.