**GEORGE v. STANFIELD et al.**

No. 2060.

District Court, D. Idaho, S. D.

May 2, 1940.

D. L. Carter, of Weiser, Idaho, and J. M. Lampert, of Boise, Idaho, for plaintiff.

J. F. Martin, of Boise, Idaho, for defendant.

CAVANAH, District Judge.

The action is brought to recover the sum of $25,000 for damages alleged to have been caused by the negligence of the defendant when in operating his automobile upon the public highway in the State of Oregon, in a negligent and reckless manner.

At the pretrial the issues were simplified to the one issue of whether or not the defendant was negligent in the operation of his automobile at the time of the accident, and if so, the extent of the alleged injuries. The defendant Stanfield Feeder Company was, upon agreement of the parties, dismissed from the case.

The complaint alleges in substance that on or about the 2nd day of January, 1938, the defendant Stanfield came to the residence of the plaintiff in Ontario, Oregon, and asked him to go with him to a place near the Owyhee school house, and south of Nyssa, Oregon, for the purpose of seeing a man, upon the exclusive business of the defendants, and to go with him, so that the plaintiff might show the defendant how to find the way to the place; that they went to the place which is known as George Mentozani's place, and in due time began the return trip toward Ontario, Oregon, in a Ford coupe, driven by the defendant. That when they reached a point four or five miles southwest of Nyssa, on the return trip, where the highway turns or bends sharply to the right, the defendant was driving the automobile at an excessive and exceedingly high rate of speed and in a negligent, careless and wanton manner, and without due regard for the safety of the plaintiff, and without having his automobile in proper condition for safe driving at the ordinary rates of speed, and because of such negligent and careless manner the defendant failed to make the turn in the highway but instead turned the automobile, negligently, recklessly and carelessly into the borrow pit on the left side of the highway, overturning the automobile on its left side and throwing the plaintiff violently against an object in the automobile, such as the steering wheel or some other object in the automobile which rendered the plaintiff unconscious, and that he has suffered a hernia and received cuts, contusions and injuries over his left eye, and nose and injuries to his left ribs and lungs, and further alleges that the defendant did not have his automobile in proper condition for safe driving and his brakes were not in safe condition, all of which allegations are denied by the defendant.

The evidence relating to that issue discloses that on January 2, 1938, the defendant Stanfield, who was then engaged in the stock business, went to the plaintiff, in Ontario, Oregon, who shortly before was one of his employees, and requested him to go with him in his automobile and assist him in locating the place where the Weiser Sheep Company was feeding and where a man they called John, was at, as he did not know. The plaintiff consented to do so and they both drove to the ranch some 22 miles from Ontario and when arriving there the defendant was unable to find the man he was looking for and they started back to Ontario in the defendant's automobile. After traveling about five or six miles, the automobile of the defendant, when going around a sharp curve in the highway turned over on its left side into the ditch alongside of the highway, thereby causing injuries to the person of the plaintiff. The road was slippery as it was icy and had frost on it.

When on their way from Ontario to the ranch the defendant drove the automobile from 50 to 60 miles per hour and when returning, before the accident, he drove at a little faster rate. While on the highway, both going from and returning to Ontario, the plaintiff protested at times to the defendant about driving too fast, and at times he would slow up the speed, and again reach the speed of from 50 to 60 miles per hour. The plaintiff informed the defendant that the highway was pretty slippery. The brakes of the automobile were known to the defendant, before the accident, to be inadequate, and not in proper condition, as he had been informed of that fact at a garage the day before.

Under these facts argument is made by the defendant that as the plaintiff did not request the defendant to stop the automobile and permit him to alight, but contin-

ued riding in it after he had warned the defendant of the danger, he cannot recover under the guest statutes of both Oregon and Idaho.

The question of the operation of the guest statutes of Idaho and Oregon upon the right of recovery lies at the threshold of the case. We must apply the Oregon guest statute, as it governs the rights of the plaintiff and the liability of the defendant, being the state in which the accident occurred, under the recognized rule that the Federal Courts will take judicial notice of the statutes and decisions of the highest court of the state where the accident occurred. Junction Railroad Company v. Bank of Ashland, 79 U.S. 226, 12 Wall. 226, 20 L.Ed. 385; Fourth National Bank of New York v. Francklyn, 120 U.S. 747, 7 S.Ct. 757, 30 L.Ed. 825; Mills v. Green, 159 U.S. 651, 16 S.Ct. 132, 40 L.Ed. 293; Steele v. Commercial Milling Co., 6 Cir., 50 F.2d 1037, 84 A.L.R. 278. This principle was recently applied by the Supreme Court in the case of Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 822, 82 L.Ed. 1188, 114 A.L.R. 1487, where the plaintiff brought an action in the Federal Court for Southern New York, for damages occurring in the State of Pennsylvania and invoking jurisdiction on the ground of diversity of citizenship. The liability of the Railroad Company for an injury caused by the negligent operation of its train in the State of Pennsylvania was held to be governed by the laws of that state as the Court said when in applying the Pennsylvania law that: "Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state. And whether the law of the state shall be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern."

Applying then, the facts here to the guest statute of the State of Oregon, Code Or.1930, § 55-1209, which provides: "No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or operator or caused by his gross negligence or intoxication or his reckless disregard of the rights of others." depends upon whether the person transported by the owner or operator of the motor vehicle was a guest without payment for such transportation and the accident was not intentional on the part of the owner or operator or caused by his gross negligence or intoxication or his reckless disregard of the rights of others.

The Supreme Court of that State has interpreted that statute in the case of Albrecht v. Safeway Stores, 159 Or. 331, 80 P.2d 62, 65, and gave it the following construction:

"In the ordinary acceptation of the term, a 'guest', according to Webster's New International Dictionary, 2d Ed., is 'a person entertained in one's house or at one's table; a visitor entertained without pay; hence, a person to whom the hospitality of a home, club, etc. is extended.' As used in the statute, a 'guest' is one who accepts a ride in any motor vehicle without payment therefor, and for his own pleasure or business. He is the recipient of the hospitality of the owner or driver. Gledhill v. Connecticut Co., 121 Conn. 102, 183 A. 379. 'Payment', as used in the statute, does not necessarily mean a money compensation. 'Payment' is not to be considered in its restricted legal sense as the discharge in money of a sum due or the performance of a pecuniary obligation. Haney v. Takakura, 2 Cal.App.2d 1, 37 P.2d 170; Cardinal v. Reinecke, 280 Mich. 15, 273 N.W. 330, 274 N.W. 379. If the person accepting the ride does so for the purpose of conferring some substantial benefit upon the owner or operator of the motor vehicle there is 'payment' within the meaning of the statute and such person is not a mere guest. McCann v. Hoffman, 9 Cal.2d 279, 70 P.2d 909; Elliott v. Behner, 146 Kan. 827, 73 P.2d 1116, 1117; Elliott v. Camper [8 W.W.Har., Del., 504], 194 A. 130; Lyttle v. Monto, 248 Mass. 340, 142 N.E. 795.

"In Thomas v. Currier Lumber Co., 283 Mich. 134, 277 N.W. 857, the principal question was whether the plaintiff while riding in the motor vehicle at the time he sustained his injuries was 'a guest without payment' within the meaning of the Michigan statute—which is substantially the same as that of this state. The court, in construing the statute, said ([277 N.W.] page 859): 'It would not be necessary, in holding that plaintiff was not a gratuitous guest passenger, to find that a cash payment was made by him for his transporta-

tion. It is sufficient if a benefit accrued by reason of such transportation.' "

And after referring to the authorities relied upon by appellant: "After careful consideration of the authorities we think that such test is too restrictive. It is rather a question of whether some substantial benefit has been conferred upon the owner or operator of the motor vehicle as compensation for the transportation. If there was, the person being transported is not a guest. It is not necessary to prove a legal contractual obligation in order to remove plaintiff from the status of a guest. There may be no enforceable contract and yet, if plaintiff was invited to ride for the purpose of rendering substantial assistance in the furtherance of the Safeway Stores' business, although not compensated therefor, he would not be a guest; Haney v. Takakura, supra; Cardinal v. Reinecke, supra; Peronto v. Cootware, 281 Mich. 664, 275 N.W. 724; McCann v. Hoffman, supra."

In 4 Blashfield Cyclopedia of Automobile Law and Practice, Permanent Ed., § 2292, it is said: "One important element in determining whether a person is a guest within the meaning and limitations of such statutes is the identity of the person or persons advantaged by the carriage. If, in its direct operation, it confers a benefit only on the person to whom the ride is given, and no benefits, other than such as are incidental to hospitality, companionship, or the like, upon the person extending the invitation, the passenger is a guest within the statutes; but, if his carriage tends to the promotion of mutual interests of both himself and the driver and operates for their common benefit or if it is primarily for the attainment of some objective or purpose of the operator, he is not a guest within the meaning of such enactments. Of course, a passenger for hire is not within their operation, regardless of whether the passenger or some one else pays or promises to pay for the transportation."

So having in mind the interpretation given to the Oregon Statute by the Supreme Court of that State, the first inquiry here is: Was the plaintiff a guest of the defendant when he was transported, and second, if so was the accident either intentional on the part of the defendant or caused by his gross negligence or intoxication or his reckless disregard of the rights of the plaintiff?

To constitute one a guest of the owner or operator of an automobile depends upon the particular facts in each case, for we find in the numerous cases cited the circumstances are different. So accepting the term guest in an automobile as used in the statute and as defined by the Supreme Court of Oregon: "* * * 'Payment' is not to be considered in its restricted legal sense as the discharge in money of a sum due or the performance of a pecuniary obligation. * * * If the person accepting the ride does so for the purpose of conferring some substantial benefit upon the owner or operator of the motor vehicle there is 'payment' within the meaning of the statute and such person is not a mere guest."

The Idaho guest statute is similar to the Oregon Statute and the Supreme Court of Idaho has interpreted the term "Guest" as used in the statute as being a "gratuitous guest". Section 48-901, I.C.A.; Gorton v. Doty, 57 Idaho 792, 69 P.2d 136; also, see, Shiels v. Audette, 119 Conn. 75, 174 A. 323, 94 A.L.R. 1206; Thomas v. Currier Lumber Co., 283 Mich. 134, 227 N.W. 857; Gledhill v. Connecticut Co., 121 Conn. 102, 183 A. 379; Lyttle v. Monto, 248 Mass. 340, 142 N.E. 795; McCann v. Hoffman, 9 Cal.2d 279, 70 P.2d 909; Nicora v. Cerveri, 49 Nev. 261, 244 P. 897.

One is not a guest in an automobile when he is requested by the owner or operator to ride and go with him on a business journey and while doing so he assists in carrying out the purpose of the journey to the benefit of the owner and driver of the automobile and not as an accommodation to the one requested to go and ride in the automobile. Under such circumstances the request of the defendant was not just an invitation to ride in the automobile as an accommodation to the plaintiff but was the desire of the defendant for the plaintiff to ride in his automobile and to assist him in carrying out the business journey which was done at the direct request of the defendant and for no other purpose than to assist him and for his benefit in carrying out a business journey.

Certainly it cannot be said that the plaintiff just accepted the invitation for a ride in the automobile and as an accommodation to him in order to bring transportation under the general legal definition of "guest" and that being the case, the facts here do not bring it under the State guest statute of either the State

of Oregon or the State of Idaho, and the defendant was under such circumstances required to use ordinary care necessary under the circumstances to prevent injury to the plaintiff, which was not exercised by him, for as has been said, he was operating his automobile at an excessive rate of speed upon a slippery highway when approaching, and at a sharp curve with knowledge of the brakes of the automobile not being adequate and in proper condition.

While the conclusion is reached that the plaintiff was not a guest of the defendant at the time of the accident and that the defendant did not use the necessary care and caution and was negligent in operating the automobile which was the proximate cause of the injuries to the plaintiff, and hence he is liable to the plaintiff for whatever personal injuries he received, yet, even if it can be said under the evidence that the plaintiff was the guest of the defendant, which the Court holds he was not, the undisputed facts disclose that the defendant was careless, negligent and reckless in the protection of the plaintiff and in disregard of his rights at the time when he was assisting, and rendering his time and service to the defendant, which was a benefit to the defendant, when he was being transported by the defendant in the automobile driven at an excessive rate of speed upon a slippery highway when approaching and while on a sharp curve and without having adequate brakes, all of which would take the case out of the Oregon State Guest Statute, as the statute expressly provides: "Unless such accident shall have been intentional on the part of said owner or operator or caused by his gross negligence or intoxication or his reckless disregard of the rights of others", and the Idaho guest statute being similar excepting the words "gross negligence" is eliminated and the word "intoxication" is substituted.

We speak of gross negligence as being a failure to bestow that degree of care which the situation demands, such caution to be exercised in view of the consequences that may require a greater amount of care than is implied of ordinary negligence, or the absence of care that was necessary under the circumstances.

We speak of recklessness as being the running of an automobile immediately into excess speed, acting without regard to the rights of others, that may result from negligence which is fairly commensurate with the perils or dangers likely to be encountered when in approaching a sharp curve upon a slippery highway without proper brakes and running at an excessive rate of speed.

So the conclusion must be reached that the defendant Stanfield is liable to the plaintiff for the injuries he received, leaving then, the question, what was the extent of those injuries and the amount of damages to be awarded to the plaintiff?

It appears that the plaintiff became unconscious at the time the accident occurred and received cuts above, below and on the side of the left eye, and his body was numb. He complained of pain in his eye, chest and abdomen, and was bleeding. He was immediately taken to a Doctor's office and bandages were placed, by the Doctor, from under his shoulder down to the side, and a number of stitches were made about the eye. His nose was cut and he complained of sharp pains in his eye, chest and abdomen at the time and since then, and says he suffers with sharp pains at times when he coughs, and is nervous, unable to sleep and work, and a hernia hurts him whenever he attempts to work. He had an old inguinal hernia, which had been previously operated upon.

There is a conflict in the testimony of the Doctors who examined him as to whether or not he has now a ventral hernia brought about by the accident, or could have been caused by external violence, and only can be helped by surgical treatment. It is the opinion of one of the Doctors who examined him that he is not physically capable of performing manual labor requiring any pulling, pushing or lifting or that would create any interabdominal pressure and that abdominal surgery would give relief but not a permanent cure.

It is difficult at times to formulate an opinion as to the extent of a physical injury where there is a conflict in the evidence of the physicians who make the examinations and when that does appear the court can only determine the manner and extent of the examination made by the physicians and the rest of the testimony as to how the accident occurred and the pain and suffering existing, if any, and the conduct of the person since an accident, but it is evident from the testimony here, taken as a whole, that the plaintiff has, no doubt, received the injuries to his eye and nose which appear

now to have been repaired and has suffered pain therefrom, and pain in his chest and abdomen and has not performed, to any extent, any manual labor since the accident occurred, which would reasonably warrant the opinion that he received, by reason of the accident, an injury in his abdomen.

Taking then, the extent of his injuries and suffering and pain he has had and is undergoing, and the expenses he has incurred and will incur in receiving proper medical and surgical treatment, and his loss of time in performing work, I am of the opinion that he should be awarded damages in the sum of $4,700 against the defendant and costs.